## HARRELL *et al. v.* BLOUNT *et al.*, receivers.

1. Findings of fact made by an auditor in favor of a plaintiff can not be treated as "unwarranted" merely because of defects in his petition.
2. A defendant is not entitled to the benefit of any defense which should be made by answer and as to which his answer is silent.
3. Showing that a return of nulla bona has been made upon an execution is not the exclusive method of proving the insolvency of the defendant therein.
4. A creditor of an insolvent corporation suing exclusively for his own benefit may proceed against stockholders for balances due upon their stock subscriptions, without joining with them other stockholders similarly liable.

5. Though the sum named in a promissory note as principal may in fact include actual principal and usurious interest, yet if such note stipulates for 8 per cent. interest from maturity, the true principal bears that rate of interest after the note becomes due; and to properly purge the note of usury, it is only necessary to eliminate the unlawful interest, i. e. interest exceeding 7 per cent. included in the nominal principal.

6. This court will not interfere with the discretion of a trial judge in refusing to sustain exceptions of fact to the report of an auditor in an equity cause, when the findings to which they relate were warranted by the evidence.

Argued December 6, 1900.—Decided January 29, 1901.

Exceptions to auditor's report.      Before Judge Spence.      Decatur superior court.      June 19, 1900.

*Hawes & Hawes,* for plaintiffs in error.
*Townsend & Westmoreland* and *Bower & Bower,* contra.

Lumpkin, P. J.   An equitable petition was filed in the superior court of Decatur county by W. M. Blount and J. R. Crawford, as receivers of the Bank of Bainbridge, against H. D. Wilson, as receiver of the Bainbridge Compress Company, and certain named persons alleged to be subscribers to the capital stock of that company. The material allegations of the petition were, in substance, as follows: On July 21, 1890, the Compress Company executed and delivered a promissory note for the principal sum of $2,500, bearing interest at the rate of 8 per cent. per annum, payable to the Bank, and due November 21 of the same year. On the 16th day of the following month, the Compress Company, with a view to securing the payment of this note, gave to the Bank a mortgage covering certain machinery and other property belonging to the company. It subsequently, however, without the knowledge or consent of the Bank, disposed of the machinery to an Ohio corporation, which had removed the same beyond the limits of the county. At the May term, 1893, of the superior court, plaintiffs, as receivers of the Bank, obtained judgment against the Compress Company for the full amount of principal, interest, and attorneys' fees due upon the above-mentioned note. Of this amount only $90 had been realized. Aside from the sum remaining due upon this judgment, the Compress Company was indebted to the Bank in the further sum of $375.75 on an open account, suit upon which had been instituted and was pending in the superior court. A proceeding to foreclose the mortgage above referred to had also been brought, but while it was pending

the court, on the 28th day of July, 1892, passed an order appointing Wilson receiver of the Compress Company, and directing him to proceed to collect all of its assets.   He had, nevertheless, "failed to collect any of the subscriptions due to the said company by the delinquent stockholders thereof, or to make any attempt to legally collect the same."   Other than unpaid stock subscriptions amounting to some ten thousand dollars, the company was without assets, and unless the plaintiffs were permitted to proceed against such of the stockholders as were within the jurisdiction of the court and compel them to pay their unpaid stock subscriptions, plaintiffs would be unable to realize upon the claims they held against that company.   The liability of the stockholders to thus account to creditors for unpaid subscriptions to its capital stock was definitely fixed by its charter.   To pursue each stockholder separately would result in a multiplicity of suits, and the equitable assets of the company would be exhausted in expensive litigation.   The plaintiffs accordingly prayed that they be allowed to join as defendants to the action all of the delinquent stock subscribers named in the petition, and that judgment be rendered against each separately for the amount of his unpaid subscription, "for the purpose of paying off and discharging" the claims which the plaintiffs held against the Compress Company.   In this connection, they further prayed that its receiver be required to "answer as to what effects [were] in his hands belonging to the said Compress Company, and that the same . . be decreed and adjudged subject and paid over on petitioners' said judgment."   The petition closed with prayers for general relief and for process.

None of the defendants undertook by demurrer to challenge the right of the plaintiffs to thus institute a proceeding independent of that in which Wilson had been appointed receiver, and, upon the sole ground that he had been remiss in his duty, to practically depose him from office and themselves proceed directly against delinquent shareholders.   On the contrary, Wilson filed an answer disclosing the amount of assets in his hands as receiver, and assigning reasons for his failure to collect unpaid subscriptions; and such of the defendant stockholders as attempted to make any defense at all joined in an answer to the following effect:   Though the "Bank of Bainbridge may have the note and mortgage set out in" plaintiffs' petition, defendants "deny that they are liable on same."   At

the time these papers were executed, W. A. Dickenson was the president of the Bank, and was also the treasurer of the Compress Company. "W. M. Blount, who was president of the said Compress Company, was also a large stockholder and director in the said Bank and was one of the owners of the said Bank." Defendants "know nothing themselves of the execution of said note and mortgage, nor do they know that said company ever received the benefit of" any part of the money alleged to have been advanced to it, "but charge that said money was never so received by said company, and further charge that if said money was ever so received by the said Compress Company, that funds sufficient of said Compress Company went into the hands of said Bank to pay off said note and mortgage, . . the sum of twenty-seven hundred dollars having passed into the hands of W. A. Dickenson as treasurer of said company, and by him placed in said Bank of Bainbridge, of which he was then the president, which funds have never been accounted for by the Bank to said Compress Company." If any money was in fact borrowed as alleged, "it was not paid over direct to said company, but was left on deposit in said Bank, and was never legally or properly paid out." One of the by-laws of the company provided that no money belonging to it "should be paid out except upon orders signed by the president and countersigned by the secretary, after being duly authorized by the board of directors, which by-law was fully known to said Bank, its president, and all of its officers; and if said money was so borrowed, . . it was paid out in violation of said rule by the president of said Bank for purposes and reasons unknown to these defendants, and without said orders being signed and countersigned as aforesaid, and without said payments being authorized by the board of directors." The machinery covered by the mortgage was sold as alleged, but this was done with the knowledge and consent of the Bank. It is not true that "there is no visible property belonging to said Compress Company," but, on the contrary, "it is the owner of a valuable compress building and lot in Bainbridge, of the value of two thousand dollars, or other large sum," which property "is subject to the debts of said company." The liability of defendants as stockholders was definitely fixed in their written contract of subscription, with the terms and conditions of which the Bank was fully acquainted at the time the note and mortgage purport to have been executed.

Defendants are unable to state what were the precise terms and conditions of that contract, the same being "not now remembered by" them, and it not being within their power to produce the writing, it having "passed into the hands of said Bank through the said W. A. Dickenson," and the Bank, though repeatedly called upon by defendants to surrender the same, having "failed to give it up." Their liability to the plaintiffs to account for unpaid subscriptions, if any such liability ever existed, was in the nature of a contract of suretyship, and they were released therefrom for the following reasons: ' The alleged loan, if made at all, was negotiated at a usurious rate of interest; this fact " destroyed the homestead waiver clause in said note and mortgage, and thereby increased their liability by enabling subscribers of small means to avail themselves of the benefit of the homestead exemptions." Defendants accordingly deny all liability in the premises, " but say, if liable at all for their unpaid subscriptions, then only ratably or proportionately to all the other subscribers." Three of the defendants (mentioned by name) "have paid their subscriptions in full to the said company." Others of them (also named) " have paid in full all calls made by the said company on said subscriptions, to wit, forty-five per cent. of the same, which is far more than their proportion of the indebtedness of said company, while other subscribers have only paid 20% and some only 10 per cent.; and they pray that if the subscribers are made liable at all, that such delinquent subscribers be required to pay up said assessment equal in amount to them before they are required to pay any more." Defendants further prayed that the plaintiffs be required to produce in court certain books and papers alleged to have gone into the hands of the Bank, as well as its own books and vouchers, showing what transactions had taken place between it and the Compress Company and how the account stood between them. Other than as above stated, the defendants asked for no affirmative relief, nor did they seek to interpose any additional defense. It is a matter worthy of comment that their answer was not demurred to. Upon the pleadings as originally filed, a correct outline of which we have attempted to give, the case was referred to an auditor. He duly made his report to the superior court. His findings being, in the main, adverse to the defendant subscribers to stock, a number of them joined in filing exceptions, both of law and of fact, to his report. On the hearing had in the court below, all

of these exceptions were, on motion of plaintiffs' counsel, stricken, and final judgment was then entered up in accordance with the report of the auditor. The case comes here upon a bill of exceptions sued out by several of the defendants, who therein express dissatisfaction with the action of the trial judge, just referred to.

1. We note that, in a number of the exceptions filed to the auditor's report, complaint is made that a finding in favor of the plaintiffs was unwarranted, because they failed to allege in their petition certain facts. If their petition was defective either in form or in substance, it should have been demurred to. The parties voluntarily went to trial upon the pleadings as originally filed, and we can not, of course, undertake to pass upon objections thereto for the first time presented by exceptions to the auditor's findings upon the issues thus raised and the evidence introduced in support thereof.

2. Nor can we view with favor other exceptions filed to the auditor's report, whereby the plaintiffs in error sought to profit by defenses which were not hinted at in their answer, and of which he could not, therefore, have properly given them the benefit even had his attention been directed thereto at the hearing, which does not appear to have been done. For instance, they thus tardily attempt to raise the point that neither the stockholders nor the directors of the Compress Company authorized the execution of the note and mortgage held by the bank. Again, in another exception, it is contended that the "auditor erred in his judgment, because there is no evidence showing that these defendants were subscribers or stockholders at the time the debt sued upon was contracted." At the hearing it was conceded by them that they were originally subscribers to the capital stock of the Compress Company; and, so far as the evidence disclosed, they had continuously remained stockholders up to the time the present action was instituted. If, in point of fact, any of them had, prior to "the time the debt sued upon was contracted," sold their stock and severed their connection with the corporation with its sanction and assent, they should have specifically pleaded their release from the obligation originally assumed to pay in full their stock subscription.

3. The auditor reported that the Compress Company had "no assets whatever except its unpaid subscriptions." The evidence showed conclusively that this was true. The defendants nevertheless excepted to his finding in this regard, on the ground that the

plaintiffs failed to prove that there had "been any return of nulla bona upon the execution against the Bainbridge Compress Company." A satisfactory answer to this somewhat remarkable position is to be found in an explicit ruling made by this court in the case of *Jennings* v. *National Bank*, 74 *Ga.* 783, wherein the proposition was laid down that "An entry of nulla bona on a fi. fa. is one method of showing the insolvency of the judgment debtor, but it is not the only way. Any other legal evidence is equally competent to establish that fact, and any witness who knows the condition of the party may testify to it."

4. The auditor's report shows that "during the hearing it developed from the testimony . . that several of the defendants were dead; whereupon defendants' counsel moved to postpone the case until the representatives of those deceased could be made parties." This the auditor declined to do, allowing the plaintiffs to proceed against such of the defendants as were properly before him. It further appeared from the evidence that other delinquent subscribers, who were solvent and within the jurisdiction of the court, had not been joined as parties defendant to the action. The auditor held it to be the right of the plaintiffs to compel such stockholders as were parties to account for their unpaid stock subscriptions, and that each was, to the extent of his unpaid subscription, liable for the payment of the plaintiffs' claims. To this ruling the defendants excepted on the ground that, upon equitable principles, the burden of satisfying the plaintiffs' demands rested upon all of the delinquent subscribers alike, and no one of them should be called upon to pay more than his proportionate share thereof, taking into consideration the amount he had paid upon his stock and comparing it with the amounts others had paid upon stock held by them. In other words, the position of the defendants was, that it was incumbent upon the auditor to undertake to make an adjustment of the equities amongst themselves, and to fix the liability of each accordingly. Evidently, the defendants failed to fully understand the character of the action brought against them. Its object was not to bring about an equitable winding up of the affairs of the Compress Company. Upon the contrary, the plaintiffs' petition was filed for their benefit and relief alone, being predicated upon the theory that, as they had exhausted their legal remedies, it was their right to subject to the payment of their judgment unpaid stock sub-

scriptions. That is to say, the proceeding amounted to merely an equitable garnishment designed to subject to the plaintiffs' demands against the corporation assets belonging to it which were beyond the reach of legal process. That a judgment creditor who has exhausted his legal remedies may pursue such a course has frequently been recognized by this court. See *Hightower* v. *Thornton,* 8 *Ga.* 486; *Stinson* v. *Williams,* 35 *Ga.* 170; *Dalton Railroad Co.* v. *McDaniel,* 56 *Ga.* 191; *King* v. *Sullivan,* 93 *Ga.* 621; *Fouché* v. *Bank,* 110 *Ga.* 827. He is under no duty to other creditors to bring an action for their benefit as well as his own; though, as a matter of course, a court of equity can not properly lend him its aid when "it appears not only that there are other creditors standing equal with him in right, but that there is not enough for all, and that the granting of the relief which he seeks will take from them some portion of their ratable share of the assets of the common debtor." 3 Thomp. Corp. §§ 3481, 3482. Nor can such a judgment creditor logically be regarded as the natural guardian of delinquent stockholders, or under any duty, legal, moral, or equitable, to act as their procheni ami, especially when, as in the case now before us, their failure to pay their stock subscriptions appears to have been the very cause of the corporation's inability to meet its obligations. Accordingly, we heartily endorse the theory advanced by a number of courts of high repute, including the Supreme Court of the United States, "that in a creditor's bill by the judgment creditor of a corporation to subject what may be due to the corporation from the stockholder in respect of his shares, it is not necessary to join all the stockholders to the end that there may be a ratable contribution among them all, but that if the stockholder . . against whom the creditor does proceed seeks contribution from those who are not joined, he must do it at his own expense and can not compel a creditor to undergo that expense." See § 3494 of the volume last referred to, and cases cited. Such a stockholder "may, it has been said, move for a receiver, or file a cross-bill, and thereby obtain a discovery of the other stockholders, and have them brought in, and enforce contribution against all who have not paid their subscriptions." See § 3481 and citations. We are not prepared to say that such steps may not very properly be taken, when practicable, provided the creditor is not thereby involved in protracted and expensive litigation, and the relief to which he is entitled unduly postponed. Be this as it may,

however, there was in the present case no effort on the part of the defendant stockholders to bring before the court shareholders not named as defendants in the plaintiffs' petition, nor was any suggestion made that a receiver should be appointed.

We gather from the record before us that, during the course of a pending proceeding previously instituted by parties other than the plaintiffs, the court had already appointed a receiver to take control of the affairs of the Compress Company, and had passed an order directing him "to at once proceed to collect any and all assets, rights, and credits in any manner belonging to the corporation." Presumably, this was done with a view to bringing about an equitable winding up of that company's affairs and adjusting the equities of all persons concerned. Yet, the plaintiffs in error failed entirely to urge upon Blount and Crawford the propriety of their intervening in that pending cause, but, on the contrary, suffered themselves, without protest, to be forced to trial as defendants to a wholly independent and apparently antagonistic proceeding. This being true, they certainly are not in a situation to invoke any aid at the hands of the court; nor, indeed, to enlist for themselves any marked degree of sympathy. They elected to stand upon their contention that, if liable at all to account for their unpaid stock subscriptions, the liability of each was limited to his ratable and proportionate part of a sum sufficient to pay off and discharge the claims against the corporation held by the plaintiffs. In other words, their position was, not that they were entitled to contribution from shareholders not before the court, but that their liability to the plaintiffs was, as matter of law, thus limited. We think this position wholly untenable. If, as against a judgment creditor who has exhausted his legal remedies, the liability of a shareholder with respect to his unpaid stock subscription be no greater than that above indicated, the doctrine of contribution could have no possible application in this class of cases. As we understand the law, that doctrine is predicated upon the idea that as each shareholder of a corporation *is* liable for the full amount of his unpaid subscription, he has an equitable right, whenever called upon by a creditor to pay more than his just proportion of a given claim, to enforce contribution from other shareholders who have not been proceeded against. Certainly, in view of the express terms of the charter under which the stockholders of the Compress Company organized,

the contention of the plaintiffs in error is not maintainable, for it is therein specifically declared that " the members of the corporation shall be liable " for its debts " to the extent of their unpaid subscriptions."

5. Another exception to the auditor's report presents the only remaining question of law for determination. This exception is disposed of by the ruling announced in the fifth headnote. In support of the same we very confidently cite sections 2886 and 2888 of the Civil Code, and *Parker* v. *Lowry*, 79 *Ga.* 740.

6. Two exceptions of fact were filed to the auditor's report. In one complaint was made that the auditor erred in not finding that " twenty-seven hundred dollars of the money of the Compress Company went into the hands of the Bank," and that it had " never accounted for same." How, under the evidence submitted, he could have reached that conclusion, we are unable to perceive. Certain is it that no such finding was demanded. The complaint made in the other exception is equally frivolous. It rests wholly upon the contention that as the note held by the Bank was for $2,500, " and the mortgage given four months afterwards to secure said note was for two thousand dollars " only, there must necessarily " have been paid upon said note five hundred dollars at the time said mortgage was made," and the auditor erred in not so finding. While we have undertaken to pass upon the merits of this and other exceptions of a similar nature, we are not to be understood as thus tacitly recognizing a right on the part of the defendant stockholders to go behind the judgment rendered against the Compress Company upon the note just referred to, there being no pretense on their part that this judgment was obtained through fraud or collusion. When, as in the case of *Heard* v. *Sibley*, 52 *Ga.* 310, proceedings are instituted against a stockholder to enforce against him an individual liability, imposed by statute, with respect to the payment of debts contracted by a corporation, it may with much force be urged that he occupies the position of a surety, and therefore is not, in that capacity, concluded by a judgment rendered against the corporation in an action to which he was not a party and which he had no opportunity to defend. But when, in a case such as the one now before us, a creditor merely seeks to compel a stockholder to pay a debt which he owes to the corporation, and which constitutes a part of its equitable assets, we are by no means sure the

same reasoning can logically be said to apply. See, in this connection, *Howard* v. *Glenn,* 85 *Ga.* 238, and 3 Thomp. Corp. § 3392 et seq. However, as we are not now called upon to make any definite ruling in regard to this matter, we leave it an open question. *Judgment affirmed. All the Justices concurring.*