13695.   ETHERIDGE v. RAWLEIGH COMPANY.

1. A guarantor cannot be joined in the same suit against the principal debtor. Holmes v. Schwab, 141 Ga. 44 (3) (80 S. E. 313); Manry v. Waxelbaum, 108 Ga. 14, 17 (33 S. E. 701); Sims v. Clark, 91 Ga. 302 (18 S. E. 158); Geiser Mfg. Co. v. Jones, 90 Ga. 307 (17 S. E. 81); Musgrove v. Luther Pub. Co., 5 Ga. App. 279 (63 S. E. 52); Ga. Casualty Co. v. Dixie Trust Co., 23 Ga. App. 447 (2) (98 S. E. 414).

2. The contract on which the defendant was sued, as a surety, with the principal debtor must be construed as one of guaranty.
DECIDED FEBRUARY 21, 1923.

Complaint; from Barrow Superior court — Judge Fortson.   May 6, 1922.

The W. T. Rawleigh Company (successor to the W. T. Rawleigh Medical Company) brought a joint action against Hudgins as principal and Etheridge as surety, on a writing signed by Hudgins, which is as follows:

"Contract.  (1) This agreement made this 22d day of October, A. D. 1913, at Freeport, Illinois, between the W. T. Rawleigh

Medical Company, party of the first part, hereinafter called the Company, and O. W. Hudgins of Perry, Georgia, party of the second part,

" (2) Witnesseth, that for and in consideration of the promises and agreements hereinafter contained, to be kept and performed by the party of the second part, the Company, unless prevented by strikes, fires, accidents or other causes beyond its control, promises and agrees to sell and deliver to the party of the second part f. o. b. cars at Freeport, Illinois, or, at its option, any other regular place of shipment, in such reasonable quantities as the party of the second part may from time to time order, all medicines, extracts, and other products manufactured or sold by it, such goods to be sold and delivered to the party of the second part at the usual and customary wholesale list prices, such prices to be shown by invoice of each shipment.

" (3) At its option the company will also sell party of the second part, partly or entirely on credit, a medicine wagon, such as said party of the second part may choose from current catalogue, circulars, or other descriptions, and charge said wagon to his account at its customary credit price less any cash payment said second party may make.

" (4) The Company further agrees to repurchase from said party of the second part, at any time during the term of or promptly after the termination or expiration of this contract, and at the wholesale prices then current, such medicines, extracts, and other products of its manufacture as he may then have on hand, in as good salable condition as when originally sold to him, on return of such products promptly by prepaid freight to Freeport, Illinois, or such other regular factory shipping point as may be designated by the Company in writing, and provided that said second party will pay the Company's actual expense of receiving, inspecting, and overhauling all such goods.

" (5) The party of the second part promises and agrees to pay the Company at wholesale prices f. o. b. cars at Freeport, Illinois, or other regular place of shipment as aforesaid, for all medicines, extracts, and other products furnished him from time to time, including any balance due on wagon, as hereinbefore provided, by weekly payments; and at the termination or expiration of this

agreement, for whatever cause, said second party further promises and agrees to pay in cash the balance due said Company on account for all medicines, extracts, other products, and wagon sold and delivered to him, as hereinbefore provided. But the time of making such payments or any or all of them may be extended by said Company without notice to the guarantors of this agreement, and without prejudice to the interest or rights of said Company.

" (6)  It is further understood and agreed that if said party of the second part pays his account in full on or before the fifteenth day of each month, he will be allowed a cash discount of three per cent.  (3%) from the usual and customary wholesale list prices.

" (7)  And it is further agreed between the parties hereto that this contract is subject to acceptance at the home office of said Company in Freeport, Illinois, and that unless previously terminated for any reason by either party upon written notice, shall expire by limitation December 31st, 1914.

" (8)  At the expiration of this contract the Company hereby agrees to make a new contract, if signed by acceptable guarantor, with said party of the second part, without requiring his account to be paid in full at that time, provided the amount of his purchases and the condition of his account has been satisfactory to said Company.

" (9)  And it is further agreed by and between the parties hereto that this agreement constitutes and shall constitute the sole and entire agreement by and between the parties hereto, unless wholly cancelled, revoked, or modified by the express written agreement of the parties hereto, to which has been affixed the corporate seal of the party of the first part.

" (10)  In testimony whereof the party of the first part has caused this agreement to be executed in its corporate name by its President, and its corporate seal to be hereunto affixed; and the said party of the second part has hereunto set his hand and seal the day and year first above written.

(Signed) " The W. T. Rawleigh Medical Company (Corporate seal ) by W. T. Rawleigh, President.

O. W. Hudgins, second party (Seal)."

Following this is a writing signed by the defendant, which is as follows:

" For and in consideration of .the extension of further time in which to pay his account for goods previously sold to the above party of the second part, and in further consideration of The W. T. Rawleigh Medical Company extending further credit to him, we, the undersigned, do hereby jointly and severally guarantee unto said The W. T. Rawleigh Medical Company, unconditionally, first, the payment in full of the balance due said Company on account as shown by its books at the date of the acceptance of this contract; and, second, the full and complete payment to said Company of any and all indebtedness incurred under the terms of the within instrument by the party of the second part, named as such therein, to which terms we fully assent, waiving acceptance of this guaranty and all notice, and agree that the written acknowledgment of his account, or any judgment against said party of the second part, shall, in every respect, bind and be conclusive against the undersigned, and that any extension of time shall not release us from liability under this guaranty.

" (Responsible men sign below in ink or indelible pencil.)

" (Names.)          (Occupation.)          (P. O. Address.) (Signed)

" M. A. Brown (Seal)      Farming,          Auburn, Ga.
" R. A. Etheridge (Seal)      Farming,          Auburn, Ga.

" The above guarantors are entitled upon request at any time to a statement of principal's account."

Etheridge demurred to the petition, on the ground that, as the contract sued on showed that it was one of guaranty and not of suretyship, he could not be joined in the same suit with the principal. The court overruled the demurrer. On the trial the judge limited the issue, so far as the defendant Etheridge was concerned, to the amount for which he was liable under his contract, construed to be that of suretyship. The court directed a verdict for the plaintiff. The case came to this court on exceptions by Etheridge to the overruling of his demurrer and to the refusal of his motion for a new trial.

*Russell & Chandler,* for plaintiff in error.

*N. L. Hutchins,* contra.

JENKINS, P. J. (After stating the foregoing facts.) " The contract of suretyship is that whereby one obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." Civil Code (1910), § 3538. As has often been said, it is sometimes very difficult to apply the rules of distinction in determining whether a particular contract is that of suretyship or guaranty. In differentiating a contract of guaranty from that of suretyship the difficulty is manifestly greater where the guaranty is absolute and not conditional. In those cases relating to negotiable instruments, where, from the nature of the transaction and of the instrument, the sole test which need be applied is the one mentioned by the code section quoted. (as in *Páris* v. *Farmers &c. Bank,* 143 *Ga.* 324, 85 S. E. 126; *Baggs* v. *Funderburke,* 11 *Ga. App.* 173, 74 S. E. 937; *Maril* v. *Boswell,* 12 *Ga. App.* 41, 76 S. E. 773), there is no great difficulty in arriving at a conclusion as to the nature of the contract. But since the distinguishing characteristics between these two kinds of contracts are not thus limited by the question of consideration, and since the test which has been mentioned is more in the nature of an earmark, not such as to constitute but such as merely to indicate the true nature of the contract, and since such a test is therefore frequently indecisive (*Baggs* v. *Funderburke,* supra, p. 174), it is often necessary to bear in mind the true and fundamental distinctions between the one contract and the other. A contract of suretyship is where one lends his credit by joining in the principal debtor's obligation, so as to render himself directly and primarily responsible with him and on the same contract, and without any reference to the solvency of the principal. In such a case, the promise of each being one and the same, and their liability being joint and several, they may be joined in the same action. *Heard* v. *Tappan,* 116 *Ga.* 930 (43 S. E. 375). A contract of guaranty exists where one lends his credit for the benefit of another, but under an obligation which is separate and distinct from that of the principal debtor, and where he renders himself secondarily or collaterally liable on account of any inability of the principal to perform his own contract. *Manry* v. *Waxelbaum Co.,* 108 *Ga.* 14 (3), 17 (supra). It is evident that

a surety, who simply joins the principal in thus becoming liable upon the principal's obligation, will usually, from the nature of such a transaction, become " bound with his principal by the same instrument, executed at the same time and on the same consideration " (1 Brandt on Suretyship (3d ed.), § 2, quoted in *Ga. Casualty Co.* v. *Dixie Trust Co.,* supra) ; while a guarantor, who enters upon his own separate and distinct undertaking, will usually, from the nature of such a transaction, become bound    before or after the obligation of the principal, and the contract " is often founded on a separate consideration from that supporting the contract of the principal." Brandt on Suretyship, supra.   Thus it is that since the contract of guaranty must, like all other contracts, be founded on a consideration, and since the guarantor's promise cannot be presumed to be founded on the consideration supporting the separate promise of the principal debtor, in which the guarantor does not join, it follows that·as a general proposition a contract of guaranty must be expected to be founded on some new or independent consideration flowing directly to the guarantor.   Civil Code (1910), § 3538.   Such, as already indicated, need not always be the case, however; as, for example, where one has guaranteed payment for goods before their delivery, and on the faith of such guaranty a sale and delivery is thereafter made to the principal. *Sims* v. *Clark,* 91 *Ga.* 302 (2) (supra) ; *Holmes* v. *Schwab,* 141 *Ga.* 44 (supra) ; *Small Co.* v. *Claxton,* 1 *Ga. App.* 83 (57 S. E. 977) ; *Sheffield* v. *Whitfield,* 6 *Ga. App.* 762 (65 S. E. 807) ; 28 C. J. 915, § 46 et seq. In cases such as these the agreement has been construed and upheld as·a contract of guaranty, although no benefit flowing to the guaranty is apparent, unless it be under the general presumption that some benefit inures to him on account of credit extended to his principal.   1 Brandt on Suretyship (3d ed.), § 25.

Applying the foregoing principles of law to the instant case, what is the nature of the contract under consideration ?   It is well recognized that in seeking to ascertain the intention of the contracting parties, the mere use of the words " guarantee " and " guaranty," by which the parties themselves have characterized the nature of their contract, will not have the effect of thus fixing its character, where, according to the terms of the writing, a contrary purpose and intention is manifested.   But, in determining

this question, the nomenclature used by the parties is entitled to due consideration, and unless, from the nature of the transaction and the character of the contract, a contrary and different purpose is apparent, then the following language, used by Chief Justice Bleckley in *Geiser Co.* v. *Jones,* 90 *Ga.* 307, 310 (supra), is altogether pertinent: "Why should it not be held that the parties, one and all, contemplated the class of contract which the words they employed, naturally and fairly construed, import, to wit a contract of guaranty ? This is the safer and better construction." In this respect the terms of the instrument now under consideration are different from the contract considered in *Watkins Medical Co.* v. *Marbach,* 20 *Ga. App.* 691 (93 S. E. 270). There the contract was expressly designated by the parties as being one of suretyship; here it is repeatedly referred to as one of guaranty. The contract before us also differs from the contract in the *Watkins* case, in that here the intent of the parties as to the nature and character of their agreement is further manifested by the embodiment therein of provisions relative to acceptance and notice of acceptance of the guaranty, which could have no possible application or relevancy under a contract of suretyship. This should properly be considered as throwing light upon the intent and purpose of the parties. A still more vital distinction between the contract here and the contract in the *Watkins* case lies in the fact that, while in the former case the undertaking of the sponsor was identical in all respects with the obligation placed by the instrument upon the principal debtor, here the contrary is true, and the writing which the plaintiff seeks to set up as one of suretyship imposes distinct and separate duties and obligations upon the sponsor, which are in no wise assumed under the writing signed by the principal. If, as we have endeavored to show, the most fundamental distinction between contracts of suretyship and those of guaranty lies in the fact that a surety lends his credit by joining in the principal debtor's obligation, so as to render himself directly and primarily liable with him and on the same contract, whereas a guarantor does not join with the principal, but by a separate and distinct obligation merely guarantees his solvency with respect to the matters set forth, then it would seem naturally and necessarily to follow that the undertaking of the surety must be "identical with that of the principal." *Graham* v. *Roberson,* 79 *Ga.* 72, 74 (3 S. E. 611). Here, contrary

to the facts in *Watkins Medical Co.* v. *Marbach,* supra, the contract under seal as signed by the defendant Etheridge obligated him to discharge any and all pre-existing unliquidated accounts owing by the principal to the plaintiff, " as shown by its books at the date of the acceptance of this contract." In the *Watkins* case, the contract in which was signed by the principal as principal, and by the party held to be surety as surety, the prior indebtedness on open account was liquidated and agreed upon, so that by the writing both principal and surety were bound alike.

An obligor on an undertaking by an agent for the faithful performance of his duties has almost universally been classed as a surety. 12 R. C. L. 1057 (6). The cases based upon an application of this well-accepted rule (as *McClain* v. *Georgian Co.,* 17 *Ga. App.* 658 (87 S. E. 1090), and cases there cited) cannot, therefore, govern in a case such as is now before us. The contract sued on, as we construe it, is one of guaranty, whereby the solvency of the principal as pertaining to the matters specified by his agreement was vouched for. In addition to the language of the contract repeatedly designating it as one of guaranty, besides its provisions with reference to the acceptance and notice of acceptance, which could have no possible meaning or relevancy to any contract of suretyship, and besides the fact that not only does the sponsor apparently fail to join with the principal in the same obligations, but the scope, effect, and extent of his liability under his promise are actually not the same, — in addition to all of these matters which have been specially pointed out, — it appears to our minds that the very nature and purpose of the instrument are more consonant with the idea that the sponsor seeks to vouch for the ability and solvency of his principal than that he has sought to join with the principal in an indefinite obligation of this particular kind and character. In view of such interpretation of the contract, and under the ruling in the first division of the syllabus, the demurrer of the defendant should have been sustained and the petition as to him dismissed.

*Judgment reversed. Stephens and Bell, JJ., concur.*