14741.  RAWLEIGH COMPANY *v.* SALTER *et al.*

This case is controlled by the ruling of this court in *Etheridge* v. *Rawleigh Co.*, 29 *Ga. App.* 698 (116 S. E. 903). The defendants in error, being guarantors, could not be joined as defendants with the principal debtor, and the court did not err in dismissing the action as to them.

DECIDED DECEMBER 7, 1923.

Action on guaranty; from Tift superior court—Judge Eve. June 9, 1923.

The contract signed by the principal debtor is as follows:

"Renewal Contract.

"1. This contract made and entered into at the city of Minneapolis, State of Minnesota, by and between the W. T. Rawleigh Company, an Illinois corporation, hereinafter called the seller, and John Q. McDowell, of Whigham, in the State of Georgia, hereinafter called the buyer.

"2. Witnesseth: Whereas said buyer desires to purchase of the seller, at wholesale, such of its manufactured products as the seller shall hereinafter determine to sell to the said buyer, the kind and quantity of which is to be optional with the seller,

"3. The seller agrees to sell and deliver to the buyer f. o. b. Minneapolis, Minnesota, or at its option f. o. b. Freeport, Illinois, or any of its branch houses, or at any other point agreed upon, such of its products as hereinabove specified and at current wholesale prices, unless prevented by strikes, fires, accidents, or other causes beyond its control; the said buyer to furnish signed orders for such goods.

"4. The buyer agrees to pay said seller the invoice price for all products so purchased under this agreement, also any balance due the seller at the date of the acceptance of this renewal contract, by cash, or by installment payments satisfactory to the seller, subject to the discounts as shown in current discount sheets and subject to paragraph 6 hereof.

"5. The seller will at its option also sell to the buyer a wagon

or a body suitable for auto chassis, for cash, or partly or wholly on time, such as the buyer may choose from the seller's current wagon catalog, circulars, or other descriptions.

"6. It is hereby further agreed that either party may at any time before the expiration of this contract, by written notice, terminate this agreement, and when so terminated the account then due and owing shall become immediately due and payable. If not so terminated, this agreement shall expire by limitation on the 31st day of December, 1920; and if buyer refuses and neglects to renew contract, the full amount due hereunder shall be due and payable promptly.

"7. It is further agreed that if dealings conducted hereunder are mutually agreeable and satisfactory, that a new contract·may be entered into for the succeeding year, but the refusal on the part of the seller to enter into a new agreement shall not in anywise affect the agreement herein on the part of the buyer to pay his account.

"8. Seller agrees to purchase from buyer any products (wagon excepted) he may have on hand, and pay or credit buyer with the wholesale price current when they are received, provided buyer returns them during the life of contract or promptly after the termination or expiration of same, and provided freight is fully prepaid to point seller designates said products are to be returned; buyer to pay seller the actual expense of inspecting and overhauling same.

"9. It is mutually understood that the seller will furnish the buyer from time to time with educational salesmanship literature, consisting of Rawleigh's Weekly, guide book, and other booklets, bulletins, circulars, leaflets, and letters of advice and suggestions for the sole purpose of aiding and assisting buyer in making sales and collections; but it is expressly agreed that nothing contained in any of the foregoing literature, letters, booklets, bulletins, leaflets, etc., shall be taken in any wise to alter, modify, change, or affect this agreement, and shall only be considered as educational and advisory.

"10. And it is further understood and agreed by and between the parties hereto that this contract includes and does and·shall constitute the sole, only, and entire agreement between the parties hereto, and further that this contract cannot and shall not be

changed or modified in any particular whatsoever by any employee or representative of the seller in any capacity, unless any such change or modification shall first be specifically reduced to writing and signed by both of the parties hereto, and then any such change or modification shall only be effective after the corporate seal of the seller shall have been duly affixed thereto.

"11.  In witness whereof the parties hereto have set their hands and seals, the seller in its corporate name by its President thereunto duly authorized, and its corporate seal hereunto affixed, and the said buyer in his own proper person.

"The W. T. Rawleigh Company

"Accepted                                by W. T. Rawleigh, President.

Jan. 2, 1920,

at Memphis, Tenn.  (Seal).    (Signed) J. Q. McDowell (Seal).''

The obligation signed by the defendants in error is as follows:

"For and in consideration of the sum of one dollar to me in hand paid, the receipt of which is hereby expressly confessed and acknowledged, or in consideration of the above-named seller extending further credit to the said buyer, we, the undersigned, do hereby jointly and severally guarantee unto said The W. T. Rawleigh Company, the above-named seller, unconditionally, the payment in full of the balance due or owing said seller on account, as shown by its books at the date of the acceptance of this contract of guaranty by the seller, and the full and complete payment of all moneys due or owing, or that may become due or owing said seller, and all indebtedness incurred by the buyer under the terms of the above and foregoing instrument by the buyer named as such therein; and to all of the terms, provisions, and agreements contained in said instruments we fully assent and agree, hereby waiving notice of acceptance by the seller, of this contract of guaranty, and all notice of any nature whatsoever, and agree that the written acknowledgment by said buyer of the amount due or owing on his account, or that any judgment rendered against him for moneys due the seller, shall in every and all respects bind and be conclusive, jointly or severally, against the undersigned.  And we further agree that in any suit brought on this contract of guaranty by the seller no other or further proof shall be required of it than to establish the amount or sum of money due and owing to it from the said buyer, and when so proven shall be conclusive and bind-

ing upon the undersigned, and further that it shall not be necessary for said seller, in order to enforce this contract of guaranty, to first institute suit against said buyer, nor exhaust its legal remedies against him. And agree that any extension of the time of payment or payments to said buyer shall not release us from liability under this contract of guaranty.

"It is hereby mutually understood and agreed that this contract of guaranty is conclusive and binding on the party or parties who sign it, whether the same is signed by any other party or parties or not, and that any statement or representation made by any person as to the undertakings of the guarantor or guarantors other than as herein expressed, or as to who or how many parties are to sign this guaranty, shall in no wise affect the rights of the company; and it is mutually understood that this is to be a continuing guaranty; and any notice in any way affecting the responsibility or liability of the signers hereunto, in order to become effective and binding upon the above-named seller, shall be reduced to writing and delivered by registered mail to the office of said seller at Minneapolis, Minnesota.

"(Responsible men sign this contract of guaranty below.)

|  |  | (P. O. |
| (Names.) | (Occupations.) | addresses.) |
| (Signed) "S. H. Salter (Seal) | Farming. | Camilla, Ga. |
| (Signed) "E. A. Norton (Seal) | Farming. | Cairo, Ga. |

"The above guarantors are entitled upon request at any time to a statement of buyer's account.

"(If you expect prompt consideration of contract, guarantors should sign names plainly, also occupations and full addresses must appear plainly in the above spaces.)

References sign below.

| "Signed as references: | (Occupation.) | (P. O. addresses.) |
| "N. F. Mallard, | Farmer, | Pelham, Ga. |
| "W. R. Miller, | Gen. Mdse., | Cairo." |

The signers of the latter contract were joined in the same action with the principal debtor. The petition alleged that "the consideration of $1 recited in said contract was not in fact paid, the true consideration being the extension of credit by the plaintiff to the defendant McDowell."

*Fulwood & Hargrett,* for plaintiff.

JENKINS, P. J. The contract sued on in this case is very similar in its essential features to that which formed the basis of the action in *Etheridge* v. *Rawleigh Co., 29 Ga. App.* 698 (116 S. E. 903). In that case the liability of the contending party was held to be that of guaranty, and not of suretyship. The same appears to be true in this case. The distinctions between these two forms of liability was gone into at considerable length in the opinion in that case. All that was there said is directly applicable here, and it does not seem profitable to repeat the reasoning there enunciated. The argument there used was summarized in the concluding paragraph, as follows: "The contract sued on, as we construe it, is one of guaranty, whereby the solvency of the principal as pertaining to the matters specified by his agreement was vouched for. In addition to the language of the contract repeatedly designating it as one of guaranty, besides its provisions with reference to the acceptance and notice of acceptance, which could have no possible meaning or relevancy to any contract of suretyship, and besides the fact that not only does the sponsor apparently fail to join with the principal in the same obligations, but the scope, effect, and extent of his liability under his promise are actually not the same,—in addition to all of these matters which have been specially pointed out, —it appears to our minds that the very nature and purpose of the instrument are more consonant with the idea that the sponsor seeks to vouch for the ability and solvency of his principal than that he has sought to join with the principal in an indefinite obligation of this particular kind and character." In that case we sought to show, that, while there might be various earmarks of distinction between contracts of guaranty and suretyship, including the one specially mentioned by the code (Civil Code of 1910, § 3538), the one vital and fundamental line of demarkation lies in the fact that, while a surety renders himself primarily responsible with the principal debtor and on the same undertaking, a guarantor becomes collaterally responsible by virtue of his own separate and independent obligation, whereby, without joining in the principal's undertaking, he yet vouches for his solvency by guaranteeing that he will be able to perform as he has agreed. In *Baggs* v. *Funderburke,* 11 *Ga. App.* 173, 174 (74 S. E. 937), this court, speaking through Judge Pottle, said: "The test laid down in the code, to distinguish a contract of suretyship from one of

guaranty, is not decisive. As with other contracts, the whole matter is governed by the intention of the parties. For instance, in the usual indemnity contracts, the parties generally intend that the indemnitor shall be surety, although he receives an independent consideration. And again, sometimes a contract will be construed to be one of guaranty, although the guarantor receives no consideration other than the benefit flowing to his principal." In *Musgrove* v. *Luther Publishing Co.*, 5 *Ga. App.* 279, 283 (63 S. E. 52), Judge Hill, speaking for this court, said: "It often happens, therefore, that contracts of guaranty do have the element of an independent consideration the benefit of which flows directly to the guarantor."

In the instant case, able counsel for the plaintiff in error conclude their well-considered brief as follows: "We most respectfully submit that the *Etheridge* case should be reviewed and overruled, as in conflict with code-section 3538, *Paris* v. *F. & M. Bank,* 143 *Ga.* 324, *Baggs* v. *Funderburke,* 11 *Ga. App.* 173, *Maril* v. *Boswell,* 12 *Ga. App.* 41, *Fields* v. *Willis,* 123 *Ga.* 272, *Manry* v. *Waxelbaum,* 108 *Ga.* 14, 17." Taking up first the *Manry* case: the ruling of the Supreme Court was not that the contract there involved was one of suretyship, but that it was one of continuing guaranty. The 3d headnote is as follows: "The defendant made the following contract with the plaintiffs: 'For and in consideration of the sum of one dollar in hand paid, and the receipt of which is hereby acknowledged, I, J. H. Manry, do hereby guarantee the prompt payment of all accounts and notes given in settlement for goods purchased by G. W. Grubbs of Bethel, Georgia, from the Waxelbaum Company of Macon, Georgia, to the extent of four hundred dollars. Be it further understood that I, J. H. Manry, shall be at liberty to withdraw this guarantee at any time, provided that the account of G. W. Grubbs is paid.' *Held,* that this was a continuing guaranty." In the opinion of the court (speaking through Justice Cobb) it is said that it can be fairly inferred that the signer of this separate instrument "only intended to bind himself in case Grubbs (the principal) was not able to pay." The excerpt quoted from the *Etheridge* case concludes with similar language. In *Paris* v. *Farmers & Merchants Bank,* 143 *Ga.* 324 (85 S. E. 126), and in *Baggs* v. *Funderburke,* supra, and *Maril* v. *Boswell,* 12 *Ga. App.* 41 (76 S. E. 773), cited in the *Paris* case, the contract sued on

was a promissory note. This fact was pointed out in the *Etheridge* case. In the *Baggs* case is found this language (p. 174): "As a general rule, where one other than the payee undertakes to guarantee the payment of a note, and he employs apt language to evidence a contract of guaranty, the undertaking will not be construed to be one of suretyship, unless the only consideration be the benefit flowing to the principal. But if the contract be made at the time the note is executed, and solely in consideration of the benefit to the principal, or if made afterwards in consideration of an extension of time to the principal, or the like, the obligation will generally be held to be that of a surety, even though words importing a contract of guaranty are employed." There does not seem to be any reasonable ground to question the soundness of this pronouncement. The syllabus of the Supreme Court in the *Paris* case is particular to point out that the contract sued on was "entered on the back of a promissory note executed by an individual and payable to a named bank." In cases such as these, where the signer merely joins in with the principal debtor by adding his signature to the face or entering it on the back of the identical promise to pay, without indicating any separate and distinct consideration or differentiating in any way his own liability from that of the principal debtor, the obligation is that of a joint and several promise to pay, and his legal status is that of a surety with the principal, and upon the same undertaking. Where the promisor merely joins his promise to pay with that of the principal debtor on the same instrument, and without any sort of variation or limitation as to liability, about the only possible way that a distinct or collateral contract could be indicated would be to express a separate and independent consideration. The same reason is applied in *Georgian Co.* v. *Jones,* 154 *Ga.* 762 (115 S. E. 490), where the principal and the surety, both by the terms of the instrument itself and by their signatures thereto, became bound for one and the same undertaking.

The remaining case especially relied upon by plaintiff in error is that of *Fields* v. *Willis,* 123 *Ga.* 272 (51 S. E. 280). That case was indirectly referred to in the *Etheridge* case as being one of the cases cited in *McClain* v. *Georgian Co.,* 17 *Ga. App.* 658 (29 *Ga. App.* 705). To the writer this has been the one most difficult to reconcile with what he regards as the rule laid down by the deci-

sions of the Supreme Court and of this court. The syllabus in that case is as follows: "C. and F. enter into a written contract whereby C. agrees to sell F. a certain number of cattle at a stipulated price and is to receive a stated advance on the purchase-money, and C. further agrees to pay a certain amount of liquidated damages in case he fails to comply with his agreement. After the signatures to the contract appears the following: 'We, the undersigned, guarantee the fulfillment of the above contract,' which is signed by W. The obligation of W., resting on no independent consideration, is that of surety" (123 *Ga.* 272). The ruling in the *Etheridge* case was based largely upon the construction which this court placed upon the rulings made in *Geiser Co.* v. *Jones,* 90 *Ga.* 307 (17 S. E. 81); *Sims* v. *Clark,* 91 *Ga.* 302 (18 S. E. 158); *Manry* v. *Waxelbaum Co.,* 108 *Ga.* 14 (33 S. E. 701); *Holmes* v. *Schwab,* 141 *Ga.* 44 (80 S. E. 313); *Musgrove* v. *Luther Pub. Co.,* 5 *Ga. App.* 279 (63 S. E. 52); *Ga. Casualty Co.* v. *Dixie Trust Co.,* 23 *Ga. App.* 447 (2), 448 (1) (98 S. E. 414). Does the *Fields* case lay down a rule contrary to the one thus arrived at? It recognizes the soundness of the *Manry* case, in which the contract recites, as does the one here, an independent consideration of $1. It recognizes that the contract in the *Geiser* case was that of guaranty, both because the obligation was independent and the consideration separate and distinct. As we interpret the *Fields* case, it is based not only upon the theory that the obligation of the defendant was without independent consideration, but that it was "primary and joint with the principal for the payment of the stipulated damages resulting from a non-performance" of his contingent obligation under the contract. In other words, it was an indemnifying bond, conditioned to save the obligee harmless up to a specific amount, on account of the principal's failure to carry out his obligation to deliver certain cattle, as imposed upon him by the contract, and the decision is made to rest upon the well-recognized doctrine that one who signs a bond of such character occupies the status of a surety, and not that of a guarantor.

But irrespective of the correctness of our interpretation of the *Fields* case and other cases relied on by plaintiff in error, it seems manifest to us that here, as in the *Etheridge* case, they cannot possibly operate to change the result of the conclusion we have arrived at. In the instant case the contract signed by the principal was

complete within itself; it makes no reference whatever to any additional contract under which the defendant in error was to become bound. Quoting from the *Musgrove* case (5 *Ga. App.* 281): "It is merely collateral to the contract which the principal signed; and he is in no way a signatory party thereto. The sole purpose of this collateral contract is to guarantee the faithful performance of the main contract; and the language used shows secondary and not primary liability. In no way do the guarantors join in the promise made by their principal; nor the principal in the contract made by his guarantors." Here, as in the *Etheridge* case, the obligation of the defendant in error was not "identical with that of the principal," and for the same reason. *Graham* v. *Roberson,* 79 *Ga.* 72, 74 (3 S. E. 611). This feature was especially stressed in the former decision. Here again, if the whole matter is governed by "the intention of the parties," the agreement styles itself as one of guarantyship no less than fourteen times, and emphasizes its own designation in many varied ways. *Geiser Co.* v. *Jones,* supra. Something more than a mere usual, casual, and perhaps erroneous designation is manifested, where legal and technical expressions pertaining peculiarly to the contract of guaranty are repeatedly employed. The defendants not only are repeatedly called "guarantors;" not only is the contract itself designated as a "guaranty;" but it is styled both unconditional and continuing. Not only this, but here, as in the *Etheridge* case, the actual intention of the parties is clearly manifested by the provision in the instrument waiving notice of acceptance, since such a provision could have no possible relevancy in a contract of suretyship.

Counsel for plaintiff in error, while asking that the *Etheridge* case be reviewed and overruled, seek also to differentiate that case from the instant one by calling attention to the additional stipulations in the present case, providing: (1) that in any suit brought against the makers the plaintiff need prove only the amount due by the principal debtor; (2) that suit may be instituted against the sureties without first suing the principal; and (3) a monetary consideration flowing to the defendants in error is here recited, which plaintiff in its petition alleges was not in fact paid. None of these additional stipulations could have any sort of relevancy in a contract of suretyship; the only purpose and intent of the first two would seem to be to effect a waiver of rights which the de-

fendants might have, not as sureties, but as guarantors. Their presence could not operate to change the nature of the contract as evidenced by the intent of the parties, but speaks their purpose to waive rights which could only possibly inure to a person signing as guarantor. It was held in *Paris* v. *Farmers & Merchants Bank,* supra, and *Baggs* v. *Funderburke,* supra, that where, "for value received," an indorsement using the word "guarantee" was written upon a promissory note of the principal debtor, it was admissible to show that the party thus signing the contract received no independent consideration. In *Maril* v. *Boswell,* supra, the same rule was applied where the consideration was stated as "$1.00." This could well be where the promissor signs the same instrument as the principal, and thus joins with him in the identical obligation. In such a case, as stated, an actual separate and independent consideration is about the only possible way to manifest an intention on the part of the parties that the signer's obligation shall be different, secondary, and collateral; but where by the very instrument itself the obligation is one and the same, a mere unwarranted statement that it is founded on a separate and independent consideration ought not to be conclusive. In a case such as this, however, where there is no identity of instrument or of obligation, a recital of such a definite consideration strengthens, if indeed it does not of itself compel, the conclusion at which we have arrived. It will be recalled that such was the consideration indicated in *Manry* v. *Waxelbaum Co.,* supra, and that the decision in the *Manry* case was approved in *Fields* v. *Willis,* supra, for this very reason.

*Judgment affirmed.    Stephens and Bell, JJ., concur.*