## 36957. WEHLE *v.* BAKER.

TOWNSEND, Judge. 1. H. L. Baker, Sr., brought suit in the Civil Court of Fulton County against Fred Wehle, Jr., based upon an alleged contract of guaranty contained in a letter as follows: "Mr. H. L. Baker, 924 Hurt Building, Atlanta, Ga. Dear Mr. Baker: At the request of Robert R. Rankin who has contracted to build my residence to be located at 2814 Queensbury Lane, N. W., I am writing this letter to certify that I agree to make payments according to schedule of payments plan [signed copy of which showing dates and amounts is attached to the letter] up to the amount of $10,760 (the first two payments and one part of the third) each advance payment check will be made jointly to you and Robert R. Rankin. This is being done in view of the fact he states that you assist him financially in his construction work. Yours truly, Fred Wehle, Jr." The letter, according to the allegations of the petition, was subsequently delivered to Baker who, relying thereon, lent specified amounts to Rankin to be used in the construction of Wehle's home and took notes from Rankin for the sums lent.

(a) The contention of the defendant that the letter is ambiguous so as to allow him to plead and prove his defense that it was not his intention to secure the sums stated in the letter to Baker except upon the happening of certain subsequent events is not well taken. The letter and attached schedule shows without ambiguity (1) a present promise to secure the addressee's interest in amounts paid by Wehle to Rankin up to the sum of $10,760; (2) a definite contingency, upon the occurrence of which the payments were to be made, and (3) the inducement, that is, extension of credit by Baker to Rankin for use in the latter's construction work. The letter is ambiguous in that it does not appear whether the consideration, that is, extension of credit to Rankin, was limited to funds to be used in Wehle's

dwelling or extended to all funds used in construction work, but this is immaterial since the petition alleges that the funds were in fact lent for the purpose of use in Wehle's house which construction is the most favorable one to the defendant of which the instrument is susceptible. Accordingly the court did not err in so construing the contract, and in striking on demurrer those paragraphs of the defendant's answer attempting to set up that the intention of the defendant in signing the letter was other than as stated therein. *Lanier* v. *Council,* 179 *Ga.* 568 (2) (176 S. E. 614).

(b) Whether or not a party has entered into a contract of guaranty is to be determined by its substance and not by the nomenclature of the agreement. *Schlittler & Johnson* v. *Deering Harvester Co.,* 3 *Ga. App.* 86, 88 (59 S. E. 342); *Moate* v. *H. L. Green Co.,* 95 *Ga. App.* 493, 504 (98 S. E. 2d 185). "A contract of guaranty exists where one lends his credit for the benefit of another, but under an obligation which is separate and distinct from that of the principal debtor, and where he renders himself secondarily or collaterally liable on account of any inability of the principal to perform his own contract." *Etheridge* v. *W. T. Rawleigh Co.,* 29 *Ga. App.* 698, 702 (116 S. E. 903); *Erbelding* v. *Noland Co.,* 83 *Ga. App.* 464, 466 (64 S. E. 2d 218). As stated in *Manry* v. *Waxelbaum Co.,* 108 *Ga.* 14, 17 (33 S. E. 701): "A guarantor . . . does not contract that the principal will pay, but simply that he is able to do so; in other words, a guarantor warrants nothing but the solvency of the principal." By his present agreement to make checks, up to the amount of $10,760, jointly payable to the plaintiff and Rankin, the defendant warranted Rankin's solvency to this amount, and the time of payment. Accordingly, the letter is not too vague and indefinite to constitute a contract of guaranty when accepted by the plaintiff, and the demurrers of the defendant to the plaintiff's petition raising this point were properly overruled.

(c) "Where the credit to be given or other consideration of a guaranty is executory and uncertain as to the amount for which, or the time at which, the guarantor is to become liable, notice of acceptance of the guaranty must be given to the guarantor in order to bind him." *Brown Grocery Co.* v. *Planters Bank of Americus,* 18 *Ga. App.* 429 (1) (89 S. E. 523). On the other hand "where the undertaking of the guarantor is positive, and the amount he agrees to guarantee is fixed, and

the guaranty is to take effect on the doing or forbearing some definite thing as its consideration, then no notice of acceptance is necessary." *Sanders* v. *Etcherson*, 36 *Ga.* 405, 409. See also *Manry* v. *Waxelbaum Co.*, 108 *Ga.* 14, supra; *Peck* v. *Precision Machine Co.*, 20 *Ga. App.* 429 (2) (93 S. E. 106). The statement in the letter as follows: "This is being done in view of the fact he states that you assist him financially in his construction work" can have no other reasonable intendment than that the commitment immediately preceding is in consideration of financial assistance by the plaintiff to Rankin in his construction work. A contract may be one of guaranty although the guarantor receives no consideration other than the benefit flowing to his principal. *Baggs* v. *Funderburke*, 11 *Ga. App.* 173, 174 (74 S. E. 937); *Rawleigh Co.* v. *Salter*, 31 *Ga. App.* 329, 333 (120 S. E. 679). The letter here accordingly constituted a continuing guaranty which became effective when the plaintiff, in reliance thereon, lent the sums of money sued for to Rankin for the purpose of being used in the construction of Wehle's house. When this was done, a valid bilateral commitment ensued, without the necessity of notice of acceptance on the part of the plaintiff. That the money had not yet been loaned by Baker to Rankin does not affect its character; as stated in the *Sanders* case, supra, the words "I guaranty the payment of any goods which A.B. delivers to C.D." is a present guaranty, although the delivery of the goods is in the future, and "the party to whom it is given may act upon it without further communication." Accordingly, the general demurrer to the petition was properly overruled, as were also special demurrers to paragraphs setting forth that Baker, in reliance upon the guaranty, lent certain sums to Rankin for the purposes therein stated and took notes from him in the principal amount thereof. As pointed out in *Guggenheimer & Co.* v. *Gilmore*, 29 *Ga. App.* 540 (1) (116 S. E. 67), notice of acceptance is not synonymous with actual acceptance, and the latter must in all cases be shown. The trial court did not err in overruling the general and special demurrers to the petition, the special demurrers attacking as conclusions, irrelevant matter, and failure to present any cause of action, the allegations that the letter constituted an offer to make checks payable jointly, in order to repay the sums which plaintiff would advance toward the construction of the house; that in acceptance thereof plaintiff advanced certain sums for

that purpose; that he took notes from Rankin for these sums and that defendant's letter constituted security for the same, and seeking interest from maturity (within the limits of the amount guaranteed in the letter) for the principal and interest thereon as represented by the notes.

2. Certain of the special demurrers to the answer not passed upon in the preceding division of this opinion were properly sustained because they pointed to pleadings that consisted of redundant, immaterial and argumentative matter or of allegations which constituted merely conclusions of the pleader. Redundant, superfluous and irrelevant matter, including transactions between the plaintiff and third parties which are calculated to mislead and prejudice the plaintiff's right to recover is properly stricken on special demurrer pointing out this defect. *Simmons* v. *Simmons,* 32 *Ga. App.* 69 (122 S. E. 644); *Watts* v. *Rich,* 49 *Ga. App.* 334 (2c) (175 S. E. 417). Matter which is merely self-serving and argumentative is irrelevant and likewise subject to be stricken. The allegations of the answer to the effect that the letter signed by the defendant was no part of his contract with Rankin, that "so far as the defendant knew" the plaintiff communicated with him only through the agency of Rankin and never advised him of the extension of credit to Rankin, that "upon information and belief" defendant alleges Baker and Rankin were joint venturers in other projects, that Baker charged exorbitant interest rates, that this had been the pattern of operations between Baker and Rankin for a long time and defendant alleges "upon information and belief" that Baker intentionally concealed these facts from him, that either Baker or Rankin was the author of the letter which he signed and it should therefore be strictly construed against the plaintiff; that plaintiff had been in the business of making construction loans for years and had knowledge of this field not possessed by the defendant; that by the time the defendant was informed of the situation he had "innocently paid substantially the entire contract price" to Rankin alone, and that the plaintiff could have prevented his loss by prompt action to prevent the same—these are attacked in detail either as conclusions of the pleader, or as self-serving, argumentative, prejudicial and constituting no legal defense to the action. The allegations are insufficient to charge the plaintiff with fraud or to estop him from complaining on the theory that Rankin, who subsequently directed

the defendant to omit the plaintiff's name from the checks, was acting as the agent of Baker in so doing, or to show any act on the part of Baker which would either estop him from proceeding with the action or would release the defendant guarantor from his commitment. There was accordingly no error in sustaining the remaining special demurrers to the answer as amended.

3. Error is assigned in the bill of exceptions on the exclusion of a paragraph of a petition in an answer between the plaintiff and Rankin unrelated to any of the issues in this case. In *Wooten* v. *Life Ins. Co. of Ga.*, 93 *Ga. App.* 665, 670 (92 S. E. 2d 567), it was held that the record as it exists at the close of the trial controls as to whether a verdict should be directed and as to whether the motion for judgment notwithstanding the verdict should be granted, and that the trial court may not on motion notwithstanding the verdict eliminate evidence on the ground that it was improperly received at the trial and then dispose of the case on the basis of the diminished record. In that case the exception was to the denial of a motion for judgment notwithstanding verdict and a companion motion for a new trial, the case being reversed on the motion for a new trial on the ground that evidence was improperly admitted. We are now presented with the question of whether, when a motion for judgment notwithstanding the verdict has been granted and there is no companion motion for a new trial and no new trial in fact desired because the complaining party prevailed on the trial, there may be an assignment of error in the bill of exceptions on the exclusion of evidence, it being contended that had the evidence illegally excluded been admitted there would have been such an issue of fact that it would have been error to direct a verdict for the plaintiff or thereafter to grant the judgment notwithstanding the verdict. This is the first time this question has been presented under our comparatively new procedure of allowing the grant of a judgment notwithstanding the verdict. In this regard, it is obvious that the reversal of the grant of such motion by the trial court does not result in a new trial; it merely results in the reinstatement of the verdict of the jury. In this respect it differs from the effect of the reversal by an appellate court of erroneous rulings of the trial court whether they are assigned in motions for a new trial or directly in a bill of exceptions. The rule has always been that the sufficiency of evidence can be attacked only by motion for

a new trial, and that where there is no motion for a new trial the question of erroneous exclusion of evidence, where it can be raised at all in a bill of exceptions, can only be done where it is made to appear "that the verdict was necessarily controlled by the ruling excluding the evidence, or that injury resulted thereform." *Shippen Hardwood Lumber Co.* v. *Johnson,* 168 *Ga.* 112, 116 (147 S. E. 115). See also 49 C.J.S. 165, Judgments, § 60 and cases cited thereunder, which states: "On a motion based on the evidence for judgment notwithstanding the verdict, the only question presented is whether or not the evidence is sufficient to justify the verdict on any theory, and the scope of inquiry does not reach other matters. Where the trial court in passing on a motion for judgment notwithstanding the verdict may consider the evidence, the scope of inquiry on such a motion does not reach . . . the court's rulings on the admission and rejection of evidence . . . the only questions presented being whether or not the evidence is sufficient to justify the verdict on any theory." It follows that the trial court, in ruling on the motion for judgment notwithstanding the verdict, could not consider the alleged error in excluding evidence, as he could if he had before him a motion for new trial.

4. At the conclusion of the evidence the court directed a verdict on all but one issue for the plaintiff, as to which ruling there is no exception. He submitted to the jury the question of whether the principal debtor, Rankin, was insolvent, so as to allow the plaintiff to proceed directly against the grantor without first suing his principal to judgment. On this issue the jury found in favor of the defendant. The plaintiff then moved for judgment notwithstanding the verdict, which motion was granted by the trial court, and error is assigned thereon. As to Rankin's solvency, it was proved that at the time of the filing of this action there were 20 unsatisfied judgments and executions outstanding against him in Fulton County, the county of his residence, that there was a deficiency of between $15,000 and $20,000 on a piece of property at a receiver's sale, formerly owned by Rankin; that Rankin had no property in Fulton or DeKalb County, that personal property of the value of $300 previously owned by him had been levied upon and sold to satisfy a fi. fa.; that neither the investigating attorney, the levying officer nor other creditors had been able to find any other assets; that Rankin also owed his wife large sums of

money; that there were suits, judgments and fi. fas. against Rankin from 1953 until after the present action was filed with entries of nulla bona thereon, and that Rankin owed several thousands of dollars on these judgments. Attorneys for other creditors of Rankin testified to the same effect, and to the fact that they had been able to find no assets belonging to him. Only the records of Fulton and DeKalb Counties had been examined by these witnesses. The defendant produced no evidence from which an inference could be drawn either that Rankin was solvent or that he had any assets whatever accessible to creditors. The plaintiff in error contends, however, that under the decision in *Ferguson* v. *Atlanta Newspapers,* 91 *Ga. App.* 115 (85 S. E. 2d 72) it is necessary to prove that the principal is insolvent by examination of the records of all 159 counties of this State and finding no assets belonging to him in any of them. In the *Ferguson* case it was held merely that the evidence was insufficient to prove insolvency (examination of the record in that case shows that no proof of insolvency of the principal was in fact, offered) and, in answering the plaintiff's argument that he could not have sued the principal and enforced a judgment against him because his whereabouts were unknown, the court said (p. 117): "If his whereabouts was unknown to everyone, it would not mean that a judgment could not be enforced against him, in the absence of proof that he had no property in the State available for that purpose." This statement, under the circumstances of that case, is obiter for no proof of insolvency was in fact offered. Here, the principal's residence in Fulton County (the county where a personal judgment against only him could be obtained) was established, and his insolvency there conclusively demonstrated. "In a suit on an endorsement by which the endorser 'only is to be liable when the maker is sued to insolvency', a fi. fa. against the maker with the return of 'no property' entered upon it, is prima facie evidence that the maker has been sued to insolvency." *Lawson* v. *Wright,* 21 *Ga.* 242. On the other hand, the return of a nulla bona on a fi. fa. where the defendant does not reside or own property has no evidentiary value whatever. *Knox* v. *Bates & Co.,* 79 *Ga.* 425 (5 S. E. 61). Insolvency may be proved by the opinions of witnesses, where they testify as to the facts on which such opinions are based (*Manley* v. *State,* 166 *Ga.* 563, 566, 144 S. E. 170), and any witness who

118

knows the financial condition of the party may testify to it (*Harrell* v. *Blount,* 112 *Ga.* 711, 717, 38 S. E. 56). The testimony offered prima facie established the insolvency of Rankin, and no testimony from which an inference of solvency could be drawn was offered by the defendant. Accordingly, verdict in favor of the plaintiff was demanded, and the trial court did not err in granting the motion for judgment notwithstanding the verdict.

*Judgment affirmed. Gardner, P. J., and Carlisle, J., concur.*

DECIDED JANUARY 20, 1958—
REHEARING DENIED FEBRUARY 4, 1958.

*Walter A. Smith, John K. Calhoun,* for plaintiff in error.
*Houston White,* contra.