### FIELDS *v.* WILLIS.

C and F enter into a written contract whereby C agrees to sell to F a certain number of cattle at a stipulated price and is to receive a stated advance on the purchase-money, and C further agrees to pay a certain amount as liquidated damages in case he fails to comply with his agreement. After the signatures to the contract appears the following, "We, the undersigned, guarantee the fulfillment of the above contract," which is signed by W. The obligation of W, resting on no independent consideration, is that of surety.

Argued May 23, — Decided June 14, 1905.

Complaint. Before Judge Spence. Mitchell superior court. October 17, 1904.

Fields instituted suit, in the superior court of Mitchell county, against J. M. Cox, a resident of that county, and E. J. Willis, a resident of the county of Decatur. It was alleged in the petition that the plaintiff made and entered into a written contract with the defendants, a copy of which was attached to the petition, by which the plaintiff agreed to purchase from Cox certain cattle at named prices, according to the terms of the contract. The plaintiff alleged full compliance on his part with the contract, in the manner set out in the declaration, whereby the defendants became liable to him in the amount of damages stipulated, to wit, $600. The following is a copy of the contract sued on:

"State of Georgia, County of Decatur. This agreement this day made and entered into by and between S. N. Fields, party of the first part, and J. M. Cox, party of the second part, witnesseth: That said party of the first part agrees on his part to purchase from the said party of the second part the following described

cattle, to wit:    150 two-year old steers at $6.50 per head; 150
one-year old steers at $5.50 per head; 150 two-year old heifers
at $6.50 per head; 150 one-year old heifers at $5.50 per head.
And all of said cattle to be good, straight, smooth, and merchant-
able, and to be of full age.    All scrub stock will be rejected by
the party of the first part.    Said cattle to be branded thus: S – F
on left hip.    Bulls are not to exceed 25% in this contract and
known as the S – stock ranging in Mitchell, Decatur, and Gads-
den counties, State of Ga. and Fla., said cattle to be passed upon
and graded in Bainbridge, Camilla, and Faceville, State of Ga.,
and this county.    Said party of the second part agrees to sustain
all loss on said cattle from death, escape, or otherwise, until they
are graded and delivered as above.    Said cattle are to be de-
livered on or before the 1st day of June, 1898, free on board cars
as above agreed, and to be paid for at time of delivery.    In order
to secure and guarantee to party of the second part, and to make
this contract more secure and binding on both parties, the party
of the first part agrees to pay and advance as part payment the
sum of $600, the receipt of which is hereby acknowledged, which
said sum of money, or any other sums of money so advanced or
may hereafter be advanced, is part payment on said cattle; and
now for the purpose of securing unto the party of the first part
the aforestipulated sums of money and the amount of fixed,
liquidated, stipulated, and stated damages hereinafter mentioned,
it is hereby expressly understood and agreed that said party of
the first part shall have liens upon any and all of said cattle, and
upon all of them that shall be purchased or now owned or held
by party of the second part, and to enforce or foreclose said lien
the said party of the first part is authorized and shall have the
right, at any time after the above date of delivery, to take posses-
sion of any and all of the above-described cattle that may be so
purchased or now owned or held by said party of the second part,
wherever they may be found, and thereafter, within a reasonable
time, to sell the same, either in the State or out of it, either at
public or private sale, and apply the proceeds thereof to the pay-
ment of said sum of money so advanced, and said fixed, liqui-
dated, stipulated, and stated damages hereinafter mentioned.    And
the said sum of money so advanced, as well as said fixed, liqui-
dated, stipulated, and stated damages, are to be paid at Bain-

bridge, in Decatur County and State of Georgia; and all of said parties hereto further agreed that damages in this matter being uncertain and not capable of being understood and ascertained by any satisfactory known rule, the uncertainty being in the nature of the subject itself and the particular circumstances of the transaction and has been the subject of actual and fair calculation between the parties, it is agreed upon by all parties hereto that the sum of one dollar per head shall be the fixed, liquidated, stipulated, and stated damages herein and settled upon by the parties hereunto, and said sum to be paid by the parties hereto in default to the other upon the failure of the party in default to comply with this agreement in whole or in part. This is signed, sealed, and executed and delivered in duplicate, each party retaining a copy. Witness our hand and seals this 15th day of Apr., A. D. 1898.

"Attest, W. U. Fields.            S. N. Fields (Seal).

        L. N. Cox.              J. M. Cox    (Seal).

"We, the undersigned, guarantee the fulfillment of the above contract.            ·            E. Willis."

"Witness, J. L. Thornton, N. P."

At the appearance term Willis demurred specially to the petition and asked that it be dismissed, upon the ground, that the court was without jurisdiction of his person; that if he was liable, he was liable, under the contract declared upon, as a guarantor, and not as a surety, and could only be sued in the county of his residence. The court sustained the demurrer and dismissed the petition, and the exception is to this judgment.

*S. S. Bennet,* for plaintiff.    *A. H. Russell,* for defendant.

EVANS, J. (After stating the facts.) If the liability of Willis was that of a guarantor, the court did not err in dismissing the suit, because a guarantor must be sued in the county of his residence. *Geiser Mfg. Co.* v. *Jones,* 90 *Ga.* 307. If he was liable as a surety, then he was properly joined in the suit with the principal in the county of the latter's residence. In some respects contracts of suretyship and of guaranty are identical, and the terms "surety" and "guaranty" are oftentimes colloquially used as interchangeable expressions of collateral liability. A guarantor has the same right as a surety by written notice to compel

the institution of a suit against the principal. Civil Code, § 2974. The theoretical distinction between the two forms of contract is clear, but in the application of the principle the decisions of courts of last resort are in a state of inextricable confusion. While the liability of both is accessorial to the principal, in the case of a surety the obligation is primary, and the guarantor's liability is secondary. "A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, the guarantor warrants nothing but the solvency of the principal." *Manry* v. *Waxelbaum*, 108 *Ga.* 17. Ordinarily the surety joins in the contract with the principal; the guarantor engages in an independent undertaking. The former's liability is immediate and direct; the latter's arises upon the default or failure of his principal to perform his undertaking. Stern's Law of Suretyship, § 6. Our code draws the distinction between the contract of suretyship and that of guaranty, that the consideration of the latter is a benefit flowing to the guarantor. "The contract of suretyship is that whereby one obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to the principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." Civil Code, § 2966. No consideration is expressed in the postscript to the contract, which is relied on as creating the relation of principal and guarantor. Neither is there any allegation in the petition that there was a consideration flowing to Willis to make the contract. On the contrary, from the averments in the petition it is inferable that the contract of the principal and Willis was contemporaneously executed. The paper declared on does not indicate to the contrary. There is no date to the obligation of Fields, although the witnesses to the contract of Fields are not the same as those who attest the signature of Willis. No particular or formal phrase is required to create a contract of suretyship. Courts may disregard formal expressions, to ascertain the real intent of the parties, and the form of the contract is immaterial, provided the

fact of suretyship exists. Civil Code, § 2969. The mere use of the word "guarantee" will not make a . contract one of guaranty. *Baldwin Fertilizer Company* v. *Carmichael*, 116 *Ga.* 763. "Guarantors, viewed in reference to the *consideration* of their contract, are either mere sureties or more than sureties. They are more than sureties when the consideration of the guaranty moves, not to them, but to the person for whose performance they become bound." *Wright* v. *Shorter*, 56 *Ga.* 76. Reading together the two contracts which appear to have been signed on a single piece of paper, it would seem that the purpose of Cox was to sell Fields a certain number of cattle of the specified grade upon stated terms, and, in default of delivery of the cattle pursuant to the contract, to become liable to Fields in stipulated damages. The extreme amount of damages which Fields would be entitled to recover, under the contract, was $600, and this sum was advanced to Cox. The defendant Willis was aware that this sum was to be advanced to Cox, because it was so stipulated in the contract. Willis's liability was limited to this sum, and his undertaking was the evident inducement to Fields to enter into the contract with Cox. No other consideration is even suggested by the contracts, which induced Willis to sign, than the binding effect of the executory contract between Fields and Cox. No independent consideration flowed to Willis, but the consideration of his contract was the engagement between Cox and Fields. In the case of *Manry* v. *Waxelbaum*, supra, the consideration was one dollar paid to the guarantor. In another case (*Geiser Mfg. Co.* v. *Jones*, supra) the consideration of guaranty was alleged to be upon "a consideration not herein named." The liability in these cases was that of guaranty rather than one of surety, because not only was the guarantor's undertaking independent of the principal's contract, but it was supported by its own consideration, which flowed to the benefit of the guarantor.

It might be urged, from the definition of the contract of suretyship quoted from the code (supra), that the obligation of the surety is to pay the debt of the principal, and not to perform undertakings other than payments of indebtedness, and for that reason the liability of Willis is only that of a guarantor. This distinction can not be sound. In the case of a forthcoming bond the undertaking of the principal is to deliver the prop-

erty at a given time and place, and the liability to pay arises upon the default of the principal so to do; and yet one who signs a bond of this character with the principal is liable as surety and not as guarantor.    The analogy between the illustration just used and the instrument under consideration is very close. Willis, by guaranteeing the fulfillment of the contract, simply acknowledges his liability to the obligee to pay the stipulated damages in case his principal fails to perform his contract.    His liability for the stipulated damages, while dependent upon his principal's failure to perform the contract, is primary and joint with the principal for the payment of the stipulated damages resulting from a non-performance; and as the consideration moving Willis to sign the contract was not a benefit flowing to himself, but the making of an executory contract between his principal and the plaintiff, we conclude that his liability on the paper declared upon was that of a surety and not a guarantor.

That there might be no doubt as to the character of the action or the nature of the contract declared on, the plaintiff offered an amendment to his petition, alleging that the " signing of said Willis [was] contemporaneous with and a part of the making of said contract, there being no contract between the said Fields and the said Cox until the signing thereof by said Willis, and the said Willis signing the same really as surety for said Cox and as joint contractor with him, and became surety for said Cox and joint contractor with him, and without any consideration or benefit flowing to said Willis, and without any consideration except the credit extended to said Cox in said contract, it being the intention of all of said parties that said Willis should be such surety and joint contractor, and not a guarantor within the strict meaning of the term, irrespective of the words used therein; and if the words used in said contract import a different legal meaning, they were so used by mistake of all parties."    This amendment in no way contradicted the terms of the writing, was germane to the cause of action set forth in the plaintiff's petition, and should, we think, have been allowed.    Treating it as presenting the real truth with regard to the nature of the contract into which the parties entered, the conclusion is irresistible that the plaintiff had a right to hold

Willis liable as a surety, and that the suit should not have been dismissed as to him.

Judgment reversed.    All the Justices concur, except Simmons, C. J., absent.