## HIRSCH & COMPANY *v.* MELDRIM.

An undertaking in writing whereby one binds himself, as surety, to repay an "advance" to be made to his principal can not be regarded as authorizing the principal and the party invited to make the advance to enter into an arrangement whereby such party releases his lien on property belonging to the other, thus enabling him to sell it for a sum in excess of the amount of a pre-existing debt he owes to the lienor, to discharge a portion of that debt, and to retain part of the proceeds of the sale in lieu of the advance which the surety authorized to be made.

Argued November 16, 1905.—Decided January 13, 1906.

Complaint. Before Judge Cann. Chatham superior court. June 9, 1905.

On May 25, 1903, William Fawcett was indebted to the firm of Charles S. Hirsch & Company in the sum of $4,000. To secure the payment of this debt he had previously delivered to that firm an

unrecorded deed or lease held by him, covering the timber on what was known as the Woodstock plantation, in the county of Chatham. Across the back of this instrument Fawcett had written his name, and had authorized Hirsch & Company to write above it any transfer or conveyance of the timber that might be necessary. On or about the date above mentioned he negotiated a sale of the timber to the Denton Bok & Lumber Company for the sum of $6,000, but could not convey the title to that company without securing a surrender of the instrument delivered to Hirsch & Company and getting that firm to release its lien on the timber. Hirsch & Company declined to surrender this security unless its demand against him was first satisfied. He was not prepared to pay the debt in full, and desired to secure a surrender of the deed or lease upon the payment of $1,500 out of the proceeds of the proposed sale of the timber, himself retaining $2,500 of the amount necessary to discharge the indebtedness. Hirsch & Company would not agree to this arrangement unless Fawcett furnished other adequate security, and he thereupon procured and delivered to that firm a writing of which the following is a copy: "Savannah, May 25th, 1903. Messrs. Charles S. Hirsch & Co., Savannah, Ga. Dear Sirs: In consideration of your advancing to Mr. William Fawcett twenty-five hundred dollars, to be paid by him out of the proceeds of such lumber as he may ship to you, said payments to be made by the retention by you of twenty-five per cent. of the net sales of such lumber to be applied to the advance of twenty-five hundred dollars, I hereby guaranty the payment by William Fawcett to you of such advance. This guaranty to be limited to November 1, 1903. Respy. P. W. Meldrim." On the faith of this guaranty, Hirsch & Company surrendered to Fawcett the deed or lease held as security for its demand against him, upon the understanding with him that he should sell the timber on the Woodstock plantation, pay the firm $1,500, and retain the balance of $2,500 due to it, out of the proceeds of the sale, as an advance of the $2,500 contemplated by the written guaranty signed by Meldrim. Fawcett subsequently sold the timber in accordance with this understanding, received the purchase-price, paid Hirsch & Company $1,500 thereof, and retained $2,500 of the amount so received, as an advance from Hirsch & Company under the terms of their agreement. The timber so sold was located fifteen miles from Fawcett's mill, was not being cut by

him at the time, and could not have been used by him as long as his mill remained at the place where it was then located. At that time he had the right to cut other timber which was sufficient to last him till after November 1, 1903, without using the Woodstock timber. At various times subsequent to the sale of that timber, Fawcett shipped lumber to Hirsch & Company, and twenty-five per cent. of the net proceeds thereof was applied to the demand against him, which was in this way reduced to $1,605.81 principal. The payment of this balance of the $2,500 indebtedness was afterwards demanded of both Fawcett and Meldrim, but payment thereof was refused. Fawcett is unable to pay his indebtedness, and has no property out of which the debt can be collected.

On October 27, 1904, Hirsch & Company instituted suit against Meldrim, with a view to holding him liable for the payment of the balance of the principal and accrued interest owing by Fawcett, the plaintiff alleging that Meldrim had guaranteed payment of an advance to him of $2,500 made by that firm. The defendant demurred to the plaintiff's petition, upon both general and special grounds. By way of amendment, the plaintiff recited the foregoing facts concerning the circumstances under which the alleged advance to Fawcett was made; and to meet the defendant's special objection that the petition contained no allegation that the plaintiff had informed him that the guaranty would be accepted and acted on, the following additional allegations were made: Fawcett was a relative of Meldrim, and one of the considerations moving the latter to sign the guaranty was the natural love and affection he bore for his kinsman; he was himself the draftsman of 'the contract of guaranty, which was in his handwriting, and since its delivery to plaintiff he has 'never undertaken to secure its return from either the plaintiff or Fawcett; the plaintiff did not request Meldrim to give this guaranty, but he signed it as a volunteer, so far as plaintiff was concerned, at the request of Fawcett; and the plaintiff neither concealed nor misrepresented anything to Meldrim, had no communication with him with reference to the guaranty, and was under no duty to hold any communication with him. That Meldrim, prior to the sale of the Woodstock timber, had knowledge of the understanding between the plaintiff and Fawcett that $2,500 of the proceeds of the sale should be treated as an "advance" to him was not claimed by the plaintiff. The court below sustained the

general demurrer to the petition as amended, and overruled the special demurrers thereto.  Exception is taken by the plaintiff to the judgment in so far as it was in the defendant's favor.

*Osborne & Lawrence,* for plaintiffs.

*Adams & Adams,* for defendant.

EVANS, J.  (After stating the facts.)  Inasmuch as no consideration flowed to Meldrim, his liability, if any, would be that of a surety, and not that of a guarantor.  *Fields* v. *Willis,* 123 *Ga.* 272.  The contract of suretyship is always one for strict construction.  Ordinarily an agreement to become responsible for an "advance" to be made to a third person is to be construed as presupposing that such third person shall receive in money or property the amount to be advanced.  The mere release of a lien on property, so as to enable the principal to sell it for cash, is not such an "advance" as is contemplated by such a contract of suretyship.  Upon its face, the writing declared on in this case indicates that the surety was to become responsible for a new liability of Fawcett to Hirsch & Company, and not for the payment of an existing debt, in whole or in part.  Clearly, by this written undertaking, Meldrim expressed a willingness to become bound for an actual advance of money or property, to be collected out of the proceeds of lumber to be shipped to Hirsch & Company by Fawcett, and therefore did not thereby authorize Fawcett to enter into an arrangement with Hirsch & Company whereby he would be enabled to deprive himself of property to which he then had the legal or equitable title, and to which Meldrim, as surety, would have the right to look for reimbursement in the event he was required to pay an advance made to his principal.  The statement of facts shows that there was no advance in money or property, but only that a lien was cancelled so as to enable Fawcett to sell certain property belonging to him for a sum in excess of the lien, and to pay over to Hirsch & Company a portion of the proceeds in part satisfaction of an existing debt he owed to that firm.

*Judgment affirmed.    All the Justices concur.*