25729. GUARANTY MORTGAGE COMPANY OF ATLANTA *et al. v.* NATIONAL LIFE INSURANCE COMPANY.

Decided December 4, 1936.   Rehearing denied December 18, 1936.

*J. K. Jordan,* for plaintiffs in error.

*Little, Powell, Reid & Goldstein,* contra.

SUTTON, J. National Life Insurance Company brought suit in two counts against Guaranty Mortgage Company of Atlanta and P. C. McDuffie. In the first count it was alleged that the plaintiff was the holder, before maturity and for value, of a certain promissory note signed by the defendants, a copy of which was attached to the petition, on which there was a balance due of $2750. The note was dated May 18, 1929, in the sum of $3250, payable to Bayne Gibson Mortgage Company or order, bearing interest at 6 per cent. per annum until maturity, and at 8 per cent. per annum after maturity. On the back of the note appeared an entry of payment of $500 on the principal amount. Also appeared the following indorsement signed by P. C. McDuffie: "For value received I guarantee payment of principal and interest of the within note in accordance with its terms and tenor, and of any extensions thereof in whole or in part." It is alleged in the first count that McDuffie's liability arises from such indorsement, and that the indorsement rested on no independent consideration, and that neither of the parties has paid the balance due on the note, or interest thereon since February 7, 1934. In the second count, after alleging that the plaintiff is the holder for value and before maturity, it is alleged that Guaranty Mortgage Company of Atlanta is indebted to the plaintiff $2750 and interest thereon at 8 per cent. per annum from February 7, 1934; that McDuffie is indebted to the plaintiff for such sum and interest, by reason of the written undertaking signed by him on the back of the note, as above quoted; that when the plaintiff purchased the note from Bayne Gibson Mortgage Company it contained the contract of McDuffie guaranteeing the payment of principal and interest; and that neither of the parties has paid the principal and interest on the past-due note. McDuffie filed a demurrer on the grounds that the allegations of the first count show that his liability is that of guarantor, and not as surety, and therefore he is not suable jointly with the principal; that the second count expressly alleges that he is a guarantor of the note, and therefore he is not suable jointly with the principal; that the petition as a whole shows that his liability is that of a guarantor, and therefore he can not be joined with the principal in an action

on the note; that no facts are alleged to charge him with liability, because it is not alleged that the plaintiff has exhausted his remedies against the principal, and the contrary appears from the petition; that the petition sets forth no cause of action against him, because no presentment or notice of non-payment of the note is alleged, "it appearing that the demurrant was liable as indorser thereon." The demurrer was overruled, and exceptions pendente lite were filed.

The defendants filed a joint answer in which it was set up that the Guaranty Mortgage Company, answering the allegations of the first count, admitted that the plaintiff was the holder, before maturity and for value, of the note sued on, but denied liability, and in which both of the defendants, answering the second count of the petition, admitted the signing of the note as shown thereon, but denied liability, and by special plea alleged that the note sued on was one of several representing a loan of $65,000 which was obtained by Guaranty Mortgage Company of Atlanta from Bayne Gibson Mortgage Company on May 18, 1929, secured by a loan deed on certain described realty in the City of Atlanta, and that on May 18, 1929, after obtaining said loan, "this defendant" [presumably Guaranty Mortgage Company of Atlanta] sold and conveyed said realty, including the apartment house thereon, to Mrs. Mary K. Wash, by deed of conveyance in which it was recited that as part of the consideration she assumed and agreed to pay the outstanding loan of $65,000 aforesaid, represented by a series of notes which included the one sued on in the present case; that the plaintiff consented to the assumption of such indebtedness and that she became the principal debtor and the "defendant" merely a surety on said notes; that on May 10, 1932, the plaintiff entered into a binding agreement with Mrs. Wash whereby, in consideration of her paying $500 on the note here involved and thereafter paying interest calculated on the original amount of $3250, rather than on the balance remaining after the payment of $500, the note would be extended for a period of six months after its maturity; that after the said agreement Mrs. Wash did pay the interest at six per cent. per annum on $3250, rather than on $2750 [on which eight per cent. interest per annum after maturity was specified in the note], and the note was extended as agreed on by her and the plaintiff; that such extension was without the knowledge, consent

or ratification of the defendants, who had no notice thereof until after the filing of the petition in the present case; and that by reason of such extension the defendants became and were wholly released from their obligations on the note and discharged from all liability to the plaintiff. The plaintiff filed a demurrer and moved to strike the answer on the ground that it did not set out any issuable defense; demurring to the joint answer of the defendants on the ground that it did not set up any issuable defense; and demurring to the special plea on the ground that it did not set up any issuable defense and did not allege that the defendants, or either of them, were in any wise damaged by the alleged acts of the plaintiff. There was also a special demurrer that a copy of the alleged binding agreement of May 10, 1932, was not attached to the special plea. The court rendered judgment overruling the demurrer to the plea and answer, but sustaining the demurrer to the special plea, striking from the defendants' answer the allegations as to increased risk, sustaining the special demurrer to the allegations as to the alleged binding agreement of May 10, 1932, striking such allegations, and further adjudging that, "The defendant P. C. McDuffie has raised in his answer as amended the following issues: First, whether his obligation is that of guarantor or surety. He has pleaded that his indorsement was not that of surety or one without extra consideration, but that of guarantor as stated in his indorsement. The pleadings between the parties raise an issue of fact on this question. If his obligation is that of guarantor he should not have been joined in this suit. Second, this defendant raises the further issue of an accounting for rents collected, which will have to be had before the amout due the plaintiff can be determined." The defendants duly filed exceptions pendente lite to the judgment striking their special plea in bar.

On the trial the plaintiff proved the execution of the note, and introduced in evidence a stipulation between the parties that neither National Life Insurance Company nor Bayne Gibson Mortgage Company paid McDuffie any sum whatever to procure his signature to the note, the stipulation being limited to the insurance company and the mortgage company. Also, a copy of a letter from Bayne Gibson Mortgage Company to P. C. McDuffie, quoting a telegram from National Life Insurance Company, as follows: "Will.

approve Guaranty Mortgage Company at sixty-five thousand if five per cent. payments begin first year and obligation carries personal indorsement McDuffie." Also, agreement for agent's commission and attorney's fees, dated April 13, 1929, signed "Guaranty Mortgage Co. of Atlanta," by "P. C. McDuffie, Pres.," and reciting as follows: "I, the undersigned, do hereby agree with Bayne Gibson Mortgage Company as follows: Said Bayne Gibson Mortgage Company is hereby appointed my agent to obtain for me a loan of seventy thousand dollars for a term of 5 years, reducible 5%, 2nd, 3rd and 4th years, . . at 6% interest. . . I agree to pay said agent the sum of thirty-five hundred dollars for services rendered hereunder. . . The compensation agreed upon to said agent shall not be taken as increasing the rate of interest; and said agent is my agent and not the lender's agent, and I consent that any and every court shall so hold, in the event of litigation. This consent is irrevocable. . . Witness my hand and seal this 13th day of April, 1929." Also, an application for the loan, signed by "Guaranty Mortgage Company of Atlanta" by "P. C. McDuffie, Pres." Also, a statement of rents received by Rankin-Whitten Realty Company from the property securing the loan. Also, the following document introduced over the objection by the defendants that it was irrelevant:

"State of Georgia, County of Fulton. We, the undersigned, Guaranty Mortgage Company of Atlanta and P. C. McDuffie, in consideration of the National Life Insurance Company of Montpelier, Vermont, entering into an agreement bearing date of July 21, 1933, by which it waives any claim which it has or may have had against Mrs. Mary K. Wash by reason of her assumption and agreement to pay a certain loan made by said Company on May 18, 1929, to Bayne Gibson Mortgage Company, and which said loan is secured by a loan deed recorded in book 1259, page 17, in the office of the clerk of the superior court of Fulton County, Georgia, and which said loan deed, the property therein described, and the debt secured thereby were on the same date acquired by National Life Insurance Company from said Bayne Gibson Mortgage Company, do hereby agree as follows: The Guaranty Mortgage Company of Atlanta, having reacquired said property from the said Mrs. Mary K. Wash, subject to said aforementioned loan, does hereby ratify and confirm said notes and the loan deed securing

the same as continuing, legal, and binding obligations, and, in consideration of the premises and one dollar to it in hand paid, does hereby transfer, sell, assign, bargain, and convey to the said National Life Insurance Company of Montpelier, Vermont, as further security for the aforementioned loan, the personal property referred to in the aforementioned agreement and more particularly described as follows: [an itemized description by models and motor numbers of eighteen refrigerators]. The said P. C. Mc-Duffie, in consideration of the premises and one dollar to him in hand paid, agrees that his indorsement on said notes shall continue of full force and effect and remain as binding obligations upon him as fully as when originally made, unaltered by the aforementioned agreement of July 21, 1933, or otherwise. In witness whereof," etc. Signed by Guaranty Mortgage Company of Atlanta by P. C. McDuffie, president, and by P. C. McDuffie. It was undisputed that the note was signed by both of the defendants as hereinbefore set out, McDuffie's signature appearing below his indorsement as quoted. He testified that he notified Bayne Gibson Mortgage Company that he would sign only as guarantor, though he did not testify that he communicated to the National Life Insurance Company any notice of such intention to be bound only as guarantor. The court directed a verdict for the plaintiff. The defendants excepted, assigning error on the overruling of the demurrer to the petition, the sustaining of the demurrer to the special plea of the defendants, to the direction of the verdict, and to the judgment entered in conformity thereto.

1. In considering the assignments of error on the overruling of McDuffie's demurrer to the petition, and to the direction of the verdict in favor of the plaintiff, it is necessary to determine first in what capacity McDuffie signed the indorsement on the note. It is not denied by the Guaranty Mortgage Company of Atlanta or by McDuffie that that corporation executed and delivered the note, and it is not denied by McDuffie that he signed the indorsement quoted above. By indorsement we do not mean a technical indorsement necessary for the transfer of title to a note, but refer to the writing which McDuffie put upon the note and signed. The negotiable-instruments law, which in 1924 was adopted in this State substantially in the form recommended by the commission on uniform State laws, superseded the prior law

governing negotiable instruments. Its purpose was to secure that uniformity in the law which is so desirable in commercial transactions throughout this country. On the subject of uniformity, see a number of cases referred to in *Citizens Bank of Blakely* v. *Hall*, 179 *Ga.* 662, 668 (177 S. E. 496, 97 A. L. R. 613). Among other things, it was designed to make the instrument itself speak the true contract of the parties, thus enabling a holder of a note before maturity and for value to avoid a contest by oral testimony that the capacity of the person signing is other than as indicated by his writing. "A person placing his signature upon an instrument other than as maker, drawer or acceptor is deemed to be an indorser unless he clearly indicates by appropriate words his intention to be bound in some other capacity." Code, § 14-604. In the present case it is clear that by the language used McDuffie indicated "his intention to be bound in some other capacity" than as a technical indorser. The inquiry thus becomes: What do the words fairly indicate as to the capacity in which he signed? That inquiry can not be answered by a resort to parol evidence as against a third party. The early decisions of the Supreme Court show a strict adherence to the law merchant in respect to the rule that parol evidence was inadmissible to vary the contract expressed by an indorsement on a promissory note; but by the adoption of the Code in this State the rule was relaxed as between the immediate parties or those taking with notice of dishonor or of the actual facts of such indorsement. See *Sanders* v. *Ayers*, 155 *Ga.* 630, 632 (117 S. E. 651). The negotiable-instruments law "is, so far as it goes, an incorporation into written law of the common law of the State, so to speak, the law merchant generally as recognized, with such changes or modifications and additions as to make a system harmonizing, so far as practicable, with that prevailing in other States." Brannan's N. I. L. (5th ed.) 83. In *Pickett* v. *Bank of Ellijay*, 182 *Ga.* 540 (186 S. E. 426), it was held that section 63 of the negotiable-instruments law (Code, § 14-604), supra, must be construed in pari materia with § 38-509, but that an indorsement can not be explained by parol evidence as against third parties who take without notice of dishonor or of the actual facts of the indorsement. The construction of the indorsement used by McDuffie is for the court. "The person primarily liable on an instrument is the person who by the terms of the instrument is

112

absolutely required to pay the same. All other parties are secondarily liable." Code, § 14-103. "The contract of suretyship is one whereby a person obligates himself to pay the debt of another in consideration of credit or indulgence, or other benefit given to his principal, the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter is a benefit flowing to the guarantor." § 103-101. The defendant in error alleges that McDuffie comes within the first class, that of a surety. McDuffie contends that the writing, properly construed, shows him to be in the second class, a guarantor, and that he can not be joined in the suit against the maker of the note. The indorsement signed by McDuffie is not free from difficulty, because, while it contains the word "guarantee" which is generally used with reference to the *solvency* of the principal, it also includes the words "the payment of," which comprehend, not mere *ability* to pay, but the actual discharge of a debt. The negotiable-instruments law does not define the expression "guarantee the payment of," and for a proper construction we must turn to the decisions of the courts of this State where such expressions, or similar ones, have been under consideration.

In *Etheridge* v. *Rawleigh Co.*, 29 *Ga. App.* 698 (116 S. E. 903), the words "guarantee . . payment of" were the subject-matter of construction; and while in that case the contract was held to be one of guaranty, it was clearly set out that "In addition to the language of the contract repeatedly designating it as one of guaranty, besides its provisions with reference to the acceptance and notice of acceptance, which could have no possible meaning or relevancy to any contract of suretyship, and besides the fact that not only does the sponsor apparently fail to join with the principal in the same obligations, but the scope, effect, and extent of his liability under his promise are actually not the same, —in addition to all of these matters which have been specially pointed out, it appears to our minds that the very nature and purpose of the instrument are more consonant with the idea that the sponsor seeks to vouch for the ability and solvency of his principal than that he has sought to join with the principal in an indefinite obligation of this particular kind and character." The elements in that case not being in the present one, it does not control. In *Rawleigh Co.* v. *Salter*, 31 *Ga. App.* 329 (120 S. E.

679), the contract included the words "guarantee . . payment of," and was held to be one of guaranty, but, as pointed out in the opinion, it was in connection with other language relating to waiver of notice of acceptance, etc., which could be applicable only to a guarantor. In *Brilliant Coal Co.* v. *Gandy*, 51 *Ga. App.* 264 (180 S. E. 379), the contract was held to be one of guaranty, where it was stated that the undersigned "guarantees payment for any, or all, coal purchased," etc., but, as shown in the opinion, the contract was entered into several months before the goods were shipped, and there was no contemporaneous signing for any ascertained amount, as in the case now sub judice. In *Geiser Co.* v. *Jones*, 90 *Ga.* 307 (17 S. E. 81), a signed indorsement, "For a consideration not herein named, we guarantee the payment of this claim," etc., was held to be one of guaranty, but that case is distinguishable from the one now under consideration because, as pointed out by the court in *Fields* v. *Willis*, 123 *Ga.* 272, 276 (51 S. E. 280), "not only was the guarantor's undertaking independent of the principal's contract, but it was supported by its own consideration, which flowed to the benefit of the guarantor." In the following cases the contracts were held to be other than guarantyships: In *Fields* v. *Willis*, supra, it was held: "C and F enter into a written contract whereby C agrees to sell to F a certain number of cattle at a stipulated price and is to receive a stated advance on the purchase-money, and C further agrees to pay a certain amount as liquidated damages in case he fails to comply with his agreement. After the signatures to the contract appears the following, 'We, the undersigned, guarantee the fulfilment of the above contract,' which is signed by W. The obligation of W, resting on no independent consideration, is that of surety." In *Schlittler* v. *Deering Harvester Co.*, 3 *Ga. App.* 86 (59 S. E. 342), the indorsement was: "For value received I hereby guarantee the payment of the within note,". etc. It was held that thereby a contract of suretyship was entered into by the signer. The court also added: "The mere use of the word 'guarantee' will not make a contract one of guaranty," and "Nor do the words 'value received' conclusively import a consideration." In *Baldwin Fertilizer Co.* v. *Carmichael*, 116 *Ga.* 762 (42 S. E. 1002), the contract was not one of mere indorsement, but was for the purpose of transferring the note and was in these words: "and

also guarantee payment in full on the day it is due." The party sued was referred to in the petition as "guarantor," but an amendment seeking to substitute therefor the word "indorser" was disallowed. The Supreme Court held that the amendment should have been allowed, and added: "We question whether any such amendment was necessary, and whether the court should not have construed the contract independently of any construction which the plaintiffs may have put upon it." In that case the contract was held to be that of a technical indorser, but reference is here made to it to illustrate that the words, "guarantee payment in full on the date it is due" do not restrict the contract to one of guaranty.

In *McClain* v. *Georgian Co.*, 17 *Ga. App.* 648 (87 S. E. 1090), as to a promise, "For valid consideration, we hereby agree to the faithful performance of the above agreement by [the agent], and assume responsibility for any indebtedness incurred by him," it was held "that as to the indebtedness the third person is a surety, and not a guarantor," citing *Fields* v. *Willis*, supra, and *Watters* v. *Hertz*, 135 *Ga.* 804 (70 S. E. 338). In *Watkins Medical Co.* v. *Marbach*, 20 *Ga. App.* 691 (93 S. E. 270), it was pointed out that though there be a recital of a nominal benefit to an indorser, this will not necessarily make him a party secondarily liable; but that, the substantial consideration being the credit and indulgence given to the principal, the indorser is a surety. As so clearly presented in *Etheridge* v. *Rawleigh Co.*, supra, the distinction between a surety and a guarantor stated in the Code, § 103-101, is only an "earmark," and the fact of benefit does not necessarily establish the obligation as that of a guarantor, but other considerations must be taken into account; in which connection see *Smith* v. *Aultman*, 30 *Ga. App.* 507 (118 S. E. 459), and cit. The real test has been well stated in *Manry* v. *Waxelbaum Co.*, 108 *Ga.* 14, 17 (33 S. E. 701): "In brief, we understand the difference to be this: A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, a guarantor warrants nothing but the solvency of the prin-

cipal. Before an action can be maintained against a guarantor, therefore, it must be shown that the principal is unable to perform. The surety says to the creditor, if your debtor will not pay, I will pay. The guarantor says to him, proceed first against the principal, and if he should not be able to pay, then you may proceed against me. It has been said that there is no instance in the books of a guarantor contracting jointly with the principal. Much has been written upon this subject, but we think the above expresses the true distinction between the two classes of contracts." In line with this definition is the ruling In re Adair Realty & Trust Co., 35 Fed. (2d) 531, which involved the following indorsement: "In consideration of the purchase of this bond Adair Realty & Trust Company does hereby guarantee the payment of the within bond, both principal and interest, according to the tenor and effect thereof." Holding the Adair Realty & Trust Company to be a surety, the court said: "Although the word 'guarantee' usually imports a liability only after the principal debtor has been exhausted, the word is ambiguous. To guarantee payment according to the tenor of the bonds carries an obligation to pay principal and interest at the dates promised in the bonds. . . The contract was made at the time of the sale of the bonds and for the same consideration, and was in effect one of suretyship." With reference to this case it is submitted by the plaintiff in error that the bonds are not shown to have been of date subsequent to the adoption of the negotiable-instruments law in this State; but in our opinion such fact would have no relation to the proper construction of the language involved in the present case.

In *Musgrove v. Luther Publishing Co.,* 5 *Ga. App.* 279, 281 (63 S. E. 52), it was said: "It is often difficult to tell whether a particular contract is one of guaranty or suretyship. 'A surety and a guarantor have this in common, that they are both bound for another person; yet there are points of difference between them which should be carefully noted. A surety is usually bound with his principal by the same instrument, executed at the same time and on the same consideration. He is an original promisor and debtor from the beginning, and is held ordinarily to know every default of his principal. . . On the other hand, the contract of the guarantor *is his own separate undertaking, in which the principal does not join. It is usually entered into before or

after that of the principal, and is often founded on a separate consideration from that supporting the contract of the principal. The original contract of the principal is not the guarantor's contract, and the guarantor is not bound to take notice of its non-performance.' 1 Brandt on Suretyship (3d ed.), § 2. The surety joins in the same promise as his principal and is primarily liable; the guarantor makes a separate and individual promise and is only secondarily liable. His liability is contingent on the default of his principal, and he only becomes absolutely liable when such default takes place and he is notified thereof. 20 Cyc. 1400 et seq.; Childs on Suretyship & Guaranty, 7." While in that case, in applying the above principles to the facts, the obligation was held to be that of a guarantor, it is apparent that, in applying them to the facts of the present case, McDuffie was a surety. He entered into the contract simultaneously with the principal, and not in a separate undertaking before or after the execution of the note, and expressly bound himself for the payment of the indebtedness, not merely the *solvency* of the principal. As is shown by the petition and the copy of note attached, he was the president of the Guaranty Mortgage Company of Atlanta, the principal, and while his agreement recites "for value received," it is safe to assume that the real consideration was the credit extended to the corporation of which he was president; and we think, notwithstanding the recital of an indefinite consideration, that a proper construction of his undertaking is that he was primarily, and not secondarily, liable from the date of the signing of the same instrument with his principal; that he was obligated, from the beginning of the undertaking, to *pay* the indebtedness as a surety; and that he could be joined with the principal in the same suit. But it is argued by the plaintiff in error that if the obligation of McDuffie is that of a surety, his undertaking must be identical with that of his principal, and that the principal was to pay the amount of the note and interest and attorney's fees, while McDuffie was to pay only principal and interest. We do not think the point is well taken. In *Savannah Bank & Trust Co.* v. *Purvis*, 6 *Ga. App.* 275 (65 S. E. 35), suit was brought on a note signed by W. R. Purvis. On the back of the note appeared the following: "We or either of us hereby guarantee the payment of the within note after maturity according to its tenor," the indorsement being signed by several

individuals who were joined in the suit as sureties. Notice of intention to claim attorney's fees in connection with the suit was properly given to all but one of the indorsers, but the one was not served in time. This court, in an opinion by Judge Powell, held that the obligors undertook individually and jointly, as the plaintiff might elect, to pay the indebtedness and each and every part of it. It is clear that the court held the indorsers liable as sureties and suable in the same action against the principal, and that notwithstanding the death of the principal the case could proceed to judgment; and furthermore, that under the expressed obligation judgment might be rendered so as to include attorney's fees from all obligors who were properly served with notice in that respect.

Having reached the conclusion, from the cases discussed above, that McDuffie signed in the capacity of a surety, and not as a guarantor, it is held that the court did not err in overruling the demurrer to the first count of the petition. The second count which alleged that the corporation was indebted to the plaintiff for the balance due on the note, plus interest thereon; and that McDuffie was indebted for such sum and interest by reason of his written undertaking as expressed on the back of the note, as above quoted, and that when the plaintiff purchased the note it contained the contract "guaranteeing the payment," etc., is not equivalent to an express allegation that McDuffie signed as a guarantor, and therefore it is not subject to the ground of demurrer that "it is expressly alleged therein that this defendant is guarantor of the note sued upon; wherefore he is not suable jointly with his principal, the maker of said note." What is said in the foregoing portion of the opinion is controlling on the demurrer to the petition as a whole. The court did not err in overruling all of the grounds of the demurrer.

■ The second assignment of error is that the court erred in sustaining the plaintiff's demurrer and striking the special plea of the defendants that they were released from liability on the note, in that after the sale by the principal of the property securing the loan evidenced by the note, which assumption was consented to by the plaintiff, the plaintiff granted to the purchaser an extension of time without the knowledge, consent, or ratification of either of the defendants, it being alleged that in consideration of the purchaser paying $500 on the said note and thereafter paying an

increased rate of interest on the residue, that is to say, 6 per cent. calculated upon $3250 rather than upon said residue, the said note should be extended for a period of six months after its original maturity, all of which was done. Construing the allegations most strongly against the pleader, the alleged "increased interest" was not an increased *amount* of interest, because the note provided for 8 per cent. interest per annum after its maturity, which would be $110 for six months when calculated on the balance of $2750 remaining after the payment of $500 by the subsequent purchaser, whereas, by the alleged new agreement, 6 per cent. on $3250 for six months would amount to only $97.50, a sum less than the purchaser was obliged to pay by the assumption of the contract. An agreement to pay less than one is obliged to pay does not constitute a consideration which would support the grant, by the holder of the note, of an extension of time in the payment of the note. Nor, without so alleging, can the special plea be construed to mean that the $500 paid on the note was paid before maturity, and a payment after maturity of what one is obliged to pay does not constitute a consideration. The alleged contract between the plaintiff and the subsequent purchaser, not being supported by a consideration, would not be binding on the plaintiff, and the defendants, who it is alleged had become sureties under the agreement, would not be released. "In order to discharge a surety by an extension of time granted to the principal, not only must there be an agreement for the extension, but the indulgence must be for a definite period fixed by a *valid agreement.*" (Italics ours.) *Duckett* v. *Marlin*, 23 *Ga. App.* 630 (99 S. E. 151), and cit. Moreover, as to McDuffie, by his writing on the note, a negotiable instrument, he expressly authorized "any extensions thereof in whole or in part," without limiting the extension to the principal; and for that additional reason he can not set up a claim of release. The court did not err in sustaining the demurrer and in striking the defendants' special plea of release.

■ On trial it was admitted by McDuffie that as president of the Guaranty Mortgage Company of Atlanta he executed the note on its behalf, and that in his personal capacity he signed the written indorsement on the note. He testified that he intended to be bound only as a guarantor, that he so notified Bayne Gibson Mortgage Company before the transaction was consummated, and that it

was so understood between them. He contends that in his dealing with that company it was an agent for the plaintiff which furnished the money; but no such relationship is shown by the evidence. On the contrary, the plaintiff introduced a written agreement whereby Bayne Gibson Mortgage Company was appointed agent of Guaranty Mortgage Company of Atlanta, to secure the loan; and there was a written agreement for commissions to be paid by Guaranty Mortgage Company of Atlanta, executed on its behalf by McDuffie as its president. While he does not technically stand in its shoes, he is admittedly the holder of most of its stock, and its alter ego. In dealing with Bayne Gibson Mortgage Company he was bound to know, as the president of his corporation, that Bayne Gibson Mortgage Company was the agent of Guaranty Mortgage Company of Atlanta in obtaining the loan, and not the agent of the plaintiff. Nor did he testify that in any manner he notified the *plaintiff* that he intended to sign the indorsement only as a guarantor. It is undisputed that the plaintiff became the holder of the note before maturity and for value. As ruled above, under the written indorsement, properly construed, he is bound as a surety and suable in the same action with the principal; and he can not, as against such third party, contradict or explain by parol evidence his written agreement. Under the law and the evidence the court did not err in directing the verdict for the plaintiff.

· *Judgment affirmed. Jenkins, P. J., and Stephens, J., concur.*

ON MOTION FOR REHEARING.

SUTTON, J. In their motion for rehearing the plaintiffs in error submit that, while headnote 1(*a*) of the opinion correctly states the law, the effect of headnote 1(*c*) is that "if the contract was signed contemporaneously with the execution and delivery of the note by the maker, and though 'value received' was acknowledged in the writing, it could be shown that the real and substantial benefit is that flowing to the principal." The headnote which is thus questioned stated a principle of law, in connection with the ruling on the demurrer to the petition as elaborated in the first division of the opinion, and was not dependent on parol evidence for the facts it included as premises. To the petition was attached as an exhibit a copy of the note sued on, from which it is apparent that the note was signed in the name of Guaranty Mortgage Com-

pany of Atlanta, by P. C. McDuffie, President; and in the absence of any date to the contrary, the indorsement of McDuffie in his individual capacity is presumed to have been made at the same time. *Geiser Co.* v. *Jones, 90 Ga.* 307 (supra). Nothing but an indefinite consideration, "for value received," was stated in the writing signed by McDuffie; and, as shown in the opinion, guarantyship is not necessarily established even when a consideration does flow to the one claiming to be only a guarantor. Such a consideration is only an "earmark," which must in many instances yield to more controlling factors in determining the capacity in which one signs a writing on the back of a note. Furthermore, in the petition it was expressly alleged that the indorsement of McDuffie rested on no independent consideration. It follows that the headnote was authorized as a principle of law, in dealing with the demurrer to the petition, and it was not dependent on any consideration beyond the pleadings themselves.

It is also suggested that in holding McDuffie to be a surety this court overlooked the decision in *Baggs* v. *Funderburke,* 11 *Ga. App.* 173 (74 S. E. 937). Such is not the case, and there is nothing in that decision that is contrary to what has been here ruled. It was there shown that an action was brought on a note signed by Deal as maker, and by Baggs as indorser, in the following language: "For value received, we hereby guarantee the payment of the within note at maturity, or at any time thereafter, with interest at the rate of 8 per cent. per annum until paid, waiving demand, notice of non-payment, and protest;" that by demurrer the point was made that the contract of Baggs was one of guaranty; that the averment in the petition that he received no independent consideration was an attempt to vary the contract of guaranty; and that the trial court was without jurisdiction of the case so far as Baggs was concerned. The demurrer was overruled by the trial court. As pointed out by movants, the first headnote in that case is: "A contract on the back of a promissory note, signed by one other than the payee thereof and in the following words, 'For value received, we hereby guarantee the payment of the within note at maturity, or at any time thereafter, with interest at the rate of 8 per cent. per annum until paid, waiving demand, notice of non-payment and protest,' prima facie imports a contract of guaranty." But the petition alleged, as in the present case, that the indorse-

ment rested on no independent consideration, and the judgment of this court was that Baggs, under the allegations of the petition, was a surety for Deal, and as such was suable in the same action against the maker. It was also said: "But if the contract be made at the same time the note is executed, and solely in consideration of the benefit to the principal, or if made afterwards in consideration of an extension of time to the principal, or the like, the obligation will generally be held to be that of a surety, even though words importing a contract of guaranty are employed." While in that case it was said that parol evidence might be heard to show that the contract was different from what it appeared on its face to be, it must be borne in mind that that action was between the immediate parties, and was instituted before the adoption of the negotiable-instruments law in this State, which, as construed in *Pickett* v. *Bank of Ellijay,* supra, prohibits any showing by parol evidence that, as against a third party, the indorsement was signed in any capacity other than as evidenced by the writing itself. This view is also set forth in the opinion in the present case.

It is submitted by movants that their construction of the writing on the back of the note in the present case has been affirmed and adopted by the Supreme Court of Georgia, in *Paris* v. *Farmers & Merchants Bank,* 143 *Ga.* 324 (85 S. E. 126). We are of the opinion, however, that counsel has construed too broadly the holding in that case. In the first headnote it is apparent that the contract signed by "third persons" was to "guarantee payment . . as against the maker previously liable thereon." Here was a case of third persons being brought in, not simultaneously with the maker of the note *"previously liable thereon"* (italics ours), but subsequently to his undertaking, and, under the language employed, the third persons were making themselves secondarily liable and signing as guarantors; and the contract is distinguishable by its terms. We are also referred to the testimony of McDuffie on the trial, after the court had overruled the demurrer to the defendants' answer; and it is submitted by movants that he clearly showed that by his dealings with Bayne Gibson Mortgage Company he indicated his intention to be bound only as a guarantor. There is, however, nothing in his testimony, or elsewhere, that shows that the plaintiff, the transferee of the note in which Bayne Gibson Mortgage Company was named payee, was ever

put on notice that McDuffie intended to limit his capacity to that of a guarantor; and in the absence of such a showing the court was authorized to direct a verdict, under the evidence, in favor of the plaintiff. But it is contended that the evidence was uncontradicted that Bayne Gibson Mortgage Company was the agent of the plaintiff, and therefore that notice to the alleged agent was notice to the plaintiff. We can not agree to that contention. We think that the documentary evidence showed conclusively that Bayne Gibson Mortgage Company was the agent of the Guaranty Mortgage Company of Atlanta, and that McDuffie knew it, because he signed such documents as president of his company. In *Clarke* v. *Havard,* 111 *Ga.* 242 (36 S. E. 837, 51 L. R. A. 499), to which we are cited, the person who was held to be the agent of the one furnishing the money had actually received the money as agent, for the express purpose of lending it out at interest on behalf of the one furnishing it, and had received it, and had it on hand, before the party sued had even asked for a loan. The specific borrower was not in contemplation when the money was sent for lending purposes, but it was furnished for lending to anybody who might qualify as a borrower. The court held that the borrower's statement, in the application for the loan, that the agent was her agent was overborne by the facts and was merely an inaccurate conclusion on the part of the borrower. Consequently that case is readily distinguishable from the instant one. It is stated by counsel for movants that "the Bayne Gibson Mortgage Company did not lend its own money but that of the insurance company," but we think that, as stated in their original brief, "here the lender, Bayne Gibson Mortgage Company, was payee, and the fact that it obtained the necessary money from the insurance company is immaterial." In other words, Bayne Gibson Mortgage Company might, under its contract which did not mention the plaintiff, have obtained the funds from any source to lend to Guaranty Mortgage Company of Atlanta, and have transferred to the one furnishing the money the note it held as payee from Guaranty Mortgage Company of Atlanta. It is clear that it was not the agent of the plaintiff. If it could be said that it was acting as correspondent for a lender already in contemplation, then the decisions in *Equitable Life Assurance Society* v. *Cochran,* 170 *Ga.* 270 (152 S. E. 248), and *Harrison* v. *Bond,* 182 *Ga.* 247 (185 S. E.

346), are conclusive on the question of agency, and it must accordingly be held that Bayne Gibson Mortgage Company was not agent of the plaintiff in the present case.

*Rehearing denied. Jenkins, P. J., and Stephens, J. concur.*