## 49956. KENNEDY et al. v. THRUWAY SERVICE CITY, INC.

WEBB, Judge.

Thruway Service City, Inc. brought suit in the State Court of Troup County against Alton Murdock Faile, a resident of Troup County, and Charles I. Kennedy and C. P. Stephenson, residents of Fulton County, seeking recovery of unpaid rentals on certain restaurants and a motel totaling $7,012.23. Involved were (1) a lease agreement between Thruway and Faile dated February 8, 1972 and by its terms expiring August 29, 1973, and (2) an agreement by Kennedy and Stephenson dated May 11, 1972. This latter agreement is entitled "Letter of Intent" and reads: "We, the undersigned, Charles I. Kennedy and C. P. Stephenson, with reference to the Longhorn Restaurant, Steak Pit Restaurant, and Thruway Motel located at I-85 and Beaver Ruin Road, Norcross, Georgia, intend to pay Thruway Service City, Inc., lessors, the balance of rent due for the month of April, $2,108.33, within 60 days from this date, and we also propose to pay the rent in weekly instalments by check on the first Monday of each week on a pro rata basis for the balance of the term of the lease, expiring August 29, 1973."

The record shows that Faile leased the restaurants and the motel from Thruway from February 10, 1972 to August 29, 1973, at a monthly rental of $2,308.33 plus one-third of the property tax, that Kennedy and Stephenson were "backers" of Faile, that they were a "silent partner," that their arrangement was as a "partnership" or a "joint venture," that at the time the lease agreement was executed by Faile the first and last months' rental was paid by Stephenson, and that Thruway would not "have put him [Faile] in" possession of the premises without the involvement of Kennedy and Stephenson.

Faile did not make his April, 1972 rental payment, and Thruway notified Kennedy and Stephenson "to make sure that this is paid because it is your responsibility." In May, 1972 the auditor and bookkeeper for Thruway and Mrs. Lillian E. Shaprey, who was connected with

Thruway "decided to go out to College Park to Mr. Stephenson's office and discuss the matter with him and to make arrangements about this. Otherwise we would have to let Mr. Faile go. And of course, the result of that was we received this letter from Mr. Stephenson in which they undertook not only to pay the month of April 1972, but an additional $600 per week on the first Monday of each week right up to August 29, 1973, when the lease terminated."

Thereafter Kennedy and Stephenson deposited $600 weekly to the account of Thruway in C. & S. Bank of Chamblee, sending to Thruway the deposit slips under the letterhead of Stephenson Chemical Company. This continued until about August, 1972.

Mrs. Shaprey testified that she was present when the agreement was signed by Messrs. Kennedy and Stephenson, that "We had discussed the fact that we were dissatisfied to carry on with Mr. Faile because he was a most unsatisfactory tenant. He never kept a promise and he didn't always state the facts as they were and we were about to throw up the whole thing. Mr. Kennedy and Stephenson met with us at the truck stop and asked us to please give him a chance to recoup some of their losses that they would undertake to pay the rent for the balance of the lease if we gave them that chance. If we would grant them sixty days and from that point on they would make payments regularly. We agreed to it because they seemed to be reputable people and we felt we would have no difficulty. They asked us to come to their office and put this in writing, which we did. Mr. Stephenson drew up the letter and gave it to his secretary to type. When he returned with the letter we read it and I personally did not like the word letter of intent and we asked him to change it. He said he was in a hurry and had to catch a plane and was going away. But he was a very honorable man and we had no cause to feel anything and that everything would be alright."

Under cross examination, Mrs. Shaprey testified: "Q. When that so called Letter of Intent was signed, your corporation did not pay Mr. Stephenson anything? A. There would be no reason for us to do that. Q. I assume your answer is no. A. No. Q. And your corporation paid

Mr. Kennedy nothing for that? A. No. Q. And after that paper was signed you still had the same lease agreement with the same man that you started off with in February didn't you? A. That's right."

A verdict was returned for Thruway, judgment was entered against all three defendants, and Kennedy and Stephenson appealed. A motion by these two for the dismissal of the complaint as to them was denied, as was their motion for a directed verdict. The denials of these two motions are enumerated as error.

Kennedy and Stephenson submit that the case must stand or fall on the so-called "Letter of Intent" dated May 11, 1972 which they signed. It is their contention that the "Letter of Intent" was executed subsequent to Faile's lease agreement and evidenced an "original undertaking" by them, that their agreement was but a contract of guaranty and not of suretyship, that a guarantor must be sued in the county of his residence, and inasmuch as they are residents of Fulton County the trial court in Troup County lacked jurisdiction. They further contend that the evidence demanded a verdict for them, that their agreement makes no reference to Faile or the lease agreement, that there was no evidence from which the jury might infer that they assumed Faile's obligation under the lease agreement, and that there was no showing that there was a contract of suretyship. *Held:*

1. The designation of the agreement by Kennedy and Stephenson to pay the rental as "Letter of Intent" is of little consequence. Mere nomenclature is not of itself determinative as to whether a contract is one of guaranty or suretyship. The contents of a can of sliced beets are not changed by a label denoting them to be garden peas. It is the substance and the real intent of the parties which determine the character of an agreement. *Wolkin v. National Acceptance Co.,* 222 Ga. 487, 489 (150 SE2d 831); *Fagelson v. Pfister Aluminum Corp.,* 109 Ga. App. 663 (1), 665 (137 SE2d 313).

2. To render one a surety, the obligations of the parties are not required to be in the same instrument. *Nichols v. Miller,* 91 Ga. App. 99, 101 (84 SE2d 841). "The form of the contract is immaterial provided the fact of suretyship exists [cit.], and one may assume that relation

even by an instrument separate and distinct from that of his principal and also subsequent in time. *Baggs v. Funderburke*, [11 Ga. App. 173, 174 (74 SE 937)]." *McKibben v. Fourth Nat. Bank of Macon*, 32 Ga. App. 222 (2) (122 SE 891).

3. As between guaranty and suretyship, there seems to be distinction without a difference. Mr. Justice Evans, in *Fields v. Willis*, 123 Ga. 272, 274 (51 SE 280), said: "In some respects contracts of suretyship and of guaranty are identical, and the terms 'surety' and 'guaranty' are oftentimes colloquially used as interchangeable expressions of collateral liability. A guarantor has the same right as a surety by written notice to compel the institution of a suit against the principal. Civil Code, § 2974 [Code § 103-205]. The theoretical distinction between the two forms of contract is clear, but in the application of the principle the decisions of courts of last resort are in a state of inextricable confusion. While the liability of both is accessorial to the principal, in the case of a surety the obligation is primary, and the guarantor's liability is secondary. 'A surety binds himself to perform if the principal does not, without regard to his ability to do so. His contract is equally absolute with that of his principal. They may be sued in the same action, and judgment may be entered up against both. A guarantor, on the other hand, does not contract that the principal will pay, but simply that he is able to do so; in other words, the guarantor warrants nothing but the solvency of the principal.' *Manry v. Waxelbaum*, 108 Ga. 17 [33 SE 701]. Ordinarily the surety joins in the contract with the principal; the guarantor engages in an independent undertaking. The former's liability is immediate and direct; the latter's arises upon the default or failure of his principal to perform his undertaking." Antecedent to the foregoing statement by Justice Evans was the following: "If the liability of Willis was that of a guarantor, the court did not err in dismissing the suit, because a guarantor must be sued in the county of his residence. *Geiser Mfg. Co. v. Jones*, 90 Ga. 307 [17 SE 81]. If he was liable as a surety, then he was properly joined in the suit with the principal in the county of the latter's residence."

"The fundamental difference between a contract of suretyship and that of guaranty is that the undertaking in the former is a primary obligation to pay the debt, and in the latter it is a secondary obligation which merely guarantees the solvency of the principal. *Watkins Medical Co. v. Marbach,* 20 Ga. App. 691 (93 SE 270)." *Nichols v. Miller,* 91 Ga. App. 99, 101, supra.

Whatever may have been the difference, if any, between "guaranty" and "surety" seems to have been fused, however, at least for purposes of the Uniform Commercial Code by the adoption of the Code which provides that "surety" includes "guarantor." Code Ann. § 109A-1—201 (40).

4. Code § 103-101 provides that "The contract of suretyship is one whereby a person obligates himself to pay the debt of another *in consideration* of credit or *indulgence,* or other benefit *given to his principal,* the principal remaining bound therefor. It differs from a guaranty in this, that the consideration of the latter *is a benefit flowing to the guarantor.*"(Emphasis supplied.) See also *Fields v. Willis,* 123 Ga. 272, 275, supra.

Parol evidence is admissible to show that there was no independent consideration flowing to those signing a contract as guarantors, and that the contract is one of suretyship. Code § 103-306 also allows proof by parol of suretyship where the fact does not appear upon the face of the contract. *Wolkin v. National Acceptance Co.,* 222 Ga. 487, 489, supra; *Paris v. Farmers & Merchants Bank,* 143 Ga. 324 (1) (85 SE 126); *Baggs v. Funderburke,* 11 Ga. App. 173 (2), 175, supra.

No consideration flowed to those signing the contract, and their liability, if any, would be that of sureties, and not that of guarantors. *Hirsch & Co. v. Meldrim,* 124 Ga. 717, 720 (52 SE 813); *Fields v. Willis,* 123 Ga. 272, 274, supra.

We hold that the contract executed by Kennedy and Stephenson was one of suretyship rather than a guaranty, that they were properly joined with Faile in the complaint and the trial court had jurisdiction, and that the verdict was supported by the evidence.

*Judgment affirmed. Bell, C. J., and Marshall, J., concur.*

SUBMITTED JANUARY 6, 1975 — DECIDED FEBRUARY 5, 1975.

*Patrick, Sidener, Bryant & Hamner, Griffin Patrick, Jr., Charles L. Barrett, III,* for appellants.
*Ketzky & Hipp, Loeb C. Ketzky,* for appellee.