**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 8, 2013**

# In the Court of Appeals of Georgia

A13A1316. STILLWATER ENTERPRISES, INC. et al v. HANSON     BR-066
   PIPE & PRECAST, LLC.

BRANCH, Judge.

The guarantor on an open account appeals the entry of summary judgment in favor of the seller/creditor. The guarantor argues that the trial court erred because he was entitled to receive notice that the seller had approved the buyer's application for credit before the guaranty became binding.

Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). We review a grant or denial of summary judgment de novo and construe the evidence in the light most favorable to the nonmovant. *Home Builders Assn. of Savannah v. Chatham County*, 276 Ga. 243, 245 (1) (577 SE2d 564) (2003).

The facts are not in dispute. Stillwater Enterprises, Inc. sought to establish an account with Hanson Pipe & Precast, LLC, for Stillwater to purchase construction materials from Hanson. On March 13, 2006, Stillwater executed a four-page "Credit Application & Purchase Agreement." Page 1 of the agreement is a form wherein Stillwater was required to provide information about the company, its officers, trade references, tax status, and other data. Page 2 of the agreement is entitled "Purchase Agreement," and it provides in pertinent part that "[w]e the undersigned, agree to pay our account in full according to the general Hanson terms and conditions attached. . . for the purchase of goods and/or services." The purchase agreement is signed by an officer of Stillwater. Immediately below that signature is a one-paragraph section entitled "Guaranty" which provides as follows:

> The undersigned hereby represents that he has a financial interest in said business and on behalf of himself and his marital community hereby agrees to the above terms and conditions and personally and unconditionally guaranties, jointly and severally, payment of said business account. I grant permission for Hanson to use consumer credit reports to determine my credit worthiness as guarantor of the above account. *It is understood that credit would not be extended without this assumption of liability and that this obligation and/or liability will continue until terminated in writing sent certified mail return receipt requested.*

2

(Emphasis supplied.) The guaranty is signed by appellant Frank Steinhauer, the president of Stillwater.

Page 3 and 4 of the agreement are entitled "General Terms and Conditions For Sale." Most of these terms and conditions pertain to the sales transactions contemplated by the parties as taking place pursuant to the Purchase Agreement. Paragraph 6, which is entitled "Credit Extension," is an exception. Paragraph 6 states in part that

> This contract will not be deemed effective unless and until buyer's credit is approved by seller, in its sole discretion. If at any time the financial responsibility of the Buyer becomes unsatisfactory to Seller in its sole discretion, Seller reserves the right to require payment in advance or satisfactory security or guarantee that invoices will be paid when due, or to terminate this contract.

The Credit Application & Purchase Agreement did not require the signature of an authorized representative of Hanson.

On March 31, 2006, Hanson sent a letter to Stillwater stating that Hanson had approved Stillwater's application for credit. But Steinhauer asserts that he never personally received notice from Hanson that the credit application had been accepted or specifying the amount of credit that was being extended to Stillwater. Stillwater

thereafter ordered goods from Hanson, which Hanson delivered and Stillwater accepted. Steinhauer does not contend that he was unaware that Stillwater ordered goods from Hanson during this period or that the goods were ordered on credit. Stillwater ultimately failed to pay amounts due Hanson for materials it purchased; the unpaid orders commenced in January 2009 and ended in August 2009. Hanson demanded payment of the liquidated amount but Stillwater and Steinhauer have refused to pay. Hanson filed suit, and following cross-motions for summary judgment, the trial court entered summary judgment in favor of Hanson for the liquidated claim plus interest and attorney fees.[1]

Steinhauer's sole argument is that the guaranty cannot be enforced because the purchase agreement "was contingent upon a decision by [Hanson] to extend credit to the corporate debtor, and [Hanson] never gave proper notice to [] Steinhauer of the extension of credit or of any amount of the credit account that was established by [Hanson] for the corporate entity." Steinhauer therefore contends that the trial court erred by granting summary judgment in favor of Hanson and by denying his own motion for summary judgment.

---

[1] Although both Steinhauer and Stillwater noticed an appeal, only Steinhauer has filed briefs; Stillwater apparently has abandoned its appeal.

4

There are, in effect, two contracts at play: the Purchase Agreement and the Guaranty. The Purchase Agreement was by its very terms only a proposal to contract: it was not signed by Hanson and it provided that it would only be effective if Stillwater's credit was approved. The Purchase Agreement became effective on March 31, 2006, when Hanson notified Stillwater that it had approved Stillwater's application for credit. The question before us is whether Hanson was required to notify Steinhauer directly that Stillwater's credit had been approved in order to make the Guaranty binding or whether the Guaranty became binding in another manner.

In general, the relevant case law provides that "[a] distinction must be made between an offer to guaranty at a future time, and an absolute present guaranty." *Sanders v. Etcherson*, 36 Ga. 404, 409 (5) (1867) (emphasis omitted). With regard to the former, "notice of acceptance [of the offer of guaranty] must be given to the guarantor in order to bind him; with regard to the latter, "no notice of acceptance is necessary." Id. See also *Upshaw v. Southern Wholesale Flooring Co.*, 197 Ga. App. 511, 512 (2) (398 SE2d 749) (1990). In construing such a contract of guaranty to determine whether notice of acceptance is required, "the terms and the language [of the guaranty] are to have a reasonable and ordinary interpretation, according to the intent of the parties as disclosed by the instrument read in the light of the

5

circumstances and the purpose for which it was made." *Peck v. Precision Machine Co.*, 20 Ga. App. 429 (93 SE 106) (1917). In addition, in the event the guaranty is ambiguous regarding whether notice of acceptance is required, "a construction as would create a condition the breach of which would entirely relieve the guarantor, in the absence of such intention appearing in the contract, will not be favored." Id.

A review of the applicable case law shows that courts have considered varying contractual language and differing surrounding circumstances when determining whether notice of acceptance is required, and that no single rule can be applied automatically. See, e.g., *Upshaw*, 197 Ga. App. at 512 (2) (notice of acceptance not required where guarantor received consideration in the form of the creditor extending credit to and selling goods to the buyer, even though guaranty covered "any sum(s) of money as may now be due or may hereafter become due"); *Wehle v. Baker*, 97 Ga. App. 111, 112-13 (102 SE2d 661) (1958) (no notice of acceptance required even though delivery of the goods was in the future where guaranty stated "I guaranty the payment of any goods which A. B. delivers to C. D." ); *Ferguson v. Atlanta Newspapers*, 93 Ga. App. 622 (7) (92 SE2d 321) (1956) ("where. . . it appears that the offer of guaranty contemplated acceptance of the offer by the extension of credit, which also constituted the consideration, the creditor was under no duty to notify the

6

offerees of its acceptance or to prove acceptance otherwise than by the extension of credit."); *Sanders*, 36 Ga. at 409 (5) ("where the undertaking of the guarantor is positive, and the amount he agrees to guarantee is fixed, and the guaranty is to take effect on the doing or forbearing some definite thing as its consideration, then no notice of acceptance is necessary"; thus, notice of acceptance not required where guaranty promised payment of all debts "heretofore made and now outstanding," debt was a fixed and outstanding amount, and "guaranty was to take effect on the forbearance to sue"); *Peck*, 20 Ga. App. at 429 (notice of acceptance not required where guaranty was made at the request of the party extending the credit and it promised to guaranty a stated sum); *Sheffield v. Whitfield*, 6 Ga. App. 762 (65 SE 807) (1909) (notice of acceptance not required where language of the guaranty showed "that it should be accepted by the actual shipment of the goods, and not by a notice that the guarantors had been accepted and that the goods would be shipped.")

Here, the language of the guaranty shows that Steinhauer made an absolute present guaranty. First, rather than Steinhauer offering to enter into a guaranty, Hanson required Steinhauer to execute the guaranty on Hanson's own form as a part of Stillwater's credit application, showing that Hanson was not willing to proceed further with the transaction without Steinhauer's immediate guaranty. Second, the

7

guaranty states that Steinhauer had a financial interest in Stillwater, showing that Steinhauer received consideration for signing the guaranty, i.e., the guaranty served to protect his financial interest. Third, the terms of the guaranty provide that Hanson would not extend credit to Stillwater without Steinhauer's guaranty, showing that Steinhauer's guaranty was a prerequisite to Hanson considering extending credit to Stillwater. Finally, Steinhauer agreed that his guaranty would "continue until terminated in writing sent certified mail return receipt requested," which suggests that the guaranty became operative at the time it was signed.

In sum, the agreement and circumstances show that Steinhauer's guaranty was requested by Hanson, that it benefitted Steinhauer, and that it contemplated acceptance by Hanson's consideration of Stillwater's application for credit; thus the guaranty was an absolute present guaranty designed to commence immediately upon Steinhauer's signature to enable Hanson to proceed with the credit application process. Under these circumstances, no notice to the guarantor was required. See *Upshaw*, 197 Ga. App. at 512 (2) (where the stated consideration for guaranty was the extension of credit, guaranty could be accepted by the actual extension of credit and notice of acceptance was not required); *Ferguson*, 93 Ga. App. 622 (7); *Wehle*, 97 Ga. App. at 113; *Sheffield*, 6 Ga. App. at 765. Compare *Brown Grocery Co. v. Planters' Bank of*

8

*Americus*, 18 Ga. App. 429, 430-431 (89 SE 523) (1916) (proposed guarantors of a baseball association for the upcoming 1914 season had to be notified because guaranty was a mere proposal to guarantee and only a general letter of credit).

Moreover, Hanson promptly notified Stillwater that it had accepted Stillwater's application for credit and Stillwater thereafter commenced to order product from Hanson. Given that Steinhauer was the president of the company, this notice and Stillwater's subsequent orders gave Steinhauer an adequate means for ascertaining that credit had been extended. See Restatement (Third) of Suretyship & Guaranty § 8, Illustration 1 (1996) ("To induce C to sell goods to D Corporation on credit, S, the president of D Corporation, offers to guarantee payment for the goods. C sells and delivers the goods. C has accepted S's offer; no notification to S of acceptance is necessary because S has adequate means of learning of C's performance").

Because Steinhauer's enumeration of error is without merit, we affirm the trial court's grant of summary judgment in favor of Hanson.

*Judgment affirmed. Phipps, C. J., and Ellington, P. J., concur.*